(text box: 1) NO. 5-00-0249

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

GREG SKIDMORE, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Jefferson County.

)

v. )  No. 97-L-31

)

SUSAN THROGMORTON, )

 )

     Defendant, )

)

and )

)

SAFECO INSURANCE COMPANY, )  Honorable

)  James M. Wexstten,

     Intervening Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

Intervenor Safeco Insurance Company (Safeco) appeals from the trial court's March 29, 2000, order granting Greg Skidmore's motion for the reconsideration of an earlier motion involving the stacking of motor vehicle liability insurance policies.  We affirm.

Greg Skidmore and Susan Throgmorton were involved in a motor vehicle accident on May 30, 1995.  The vehicle Throgmorton was operating at the time of the accident was owned by her father, William Spencer.  The Spencer-owned vehicle involved in the accident was insured by Safeco, with a policy paid for by William Spencer.  That Safeco liability policy also provided coverage for one additional Spencer-owned motor vehicle.  Additionally, the driver of the vehicle involved in the accident, Throgmorton, also had Safeco motor vehicle insurance on two vehicles she owned, plus excess liability coverage.  Each of the four motor vehicles had Safeco liability coverage of $100,000 per accident per person.

Skidmore filed suit for his bodily injuries and damages against Throgmorton.  Before the trial, Safeco analyzed its own policies and made a determination that $200,000 in coverage was applicable to Skidmore's claim.  The $100,000-per-accident-per-person limits of the Spencer policy, which was limited to the one vehicle by the application of that policy's antistacking clause, was added to $100,000 from the Throgmorton liability policy, which was also limited to one vehicle by application of the policy's antistacking clause.  Prior to the beginning of the trial, Skidmore and Throgmorton entered into an agreement whereby Skidmore agreed to collect any judgment only against the available insurance proceeds, absolving Throgmorton from any personal liability for any amount over the available insurance.

Following the trial, the jury returned a $300,000 verdict in Skidmore's favor.  Pursuant to the pretrial stipulation and in a proposed full satisfaction of the judgment, Safeco issued a check to Skidmore in the amount of $201,813.69.  

Thereafter, Skidmore filed a motion with the trial court and sought to have the trial court determine the amount of liability coverage applicable to this particular motor vehicle accident.  Specifically, Skidmore was asking the trial court to find that $400,000 in coverage was available.  Skidmore argued that the antistacking clause of each applicable policy should be disregarded.  Safeco sought and was granted leave to intervene in this case for the purpose of contesting Skidmore's motion.  Safeco filed a motion for declaratory judgment, arguing that only $200,000 in liability coverage was available–$100,000 from each applicable policy.  On November 29, 1999, the trial court entered its order concluding that only $200,000 in insurance coverage was available for this particular accident.  

On December 20, 1999, Skidmore filed a motion for the reconsideration of the earlier order.  On March 29, 2000, the trial court entered an order that reversed its previous order. The court found latent ambiguities in the insurance policy language and concluded that $400,000 in insurance coverage was available. 

Safeco appeals.  Safeco does not dispute the existence of liability coverage applicable to this case.  Additionally, Safeco accepts the jury's verdict.  Safeco appeals to challenge the stacking of coverages that the trial court found appropriate, and Safeco contends that the language of its policies is not ambiguous.

The construction of an insurance policy involves a question of law, and therefore, our review is 
de novo
.  
American States Insurance Co. v. Koloms
, 177 Ill. 2d 473, 480, 687 N.E.2d 72, 75 (1997).

In an argument specifically brought up for the first time at oral argument, Safeco notes that Skidmore is attempting to assert a perceived policy ambiguity about language over which both the insurer and the insureds agree.  In other words, assuming that he can assert an insurance policy language ambiguity, Skidmore, the injured party, is in an outside position similar to that of a third-party beneficiary.

Before we even address whether the language at issue is ambiguous, we must decide whether Skidmore can assert these "ambiguities."  Because that issue involves parties to the insurance contract, which involves policy construction, our review remains 
de novo
.

Initially, Skidmore argues that Safeco waived any argument on this issue by failing to raise the issue in the trial court.  See 
Allstate Insurance Co. v. Tucker
, 178 Ill. App. 3d 809, 813, 533 N.E.2d 1004, 1007-08 (1989).  However, the doctrine of waiver serves as a warning to the parties rather than a limitation on the appellate court's jurisdiction.  
American Federation of State, County & Municipal Employees, Council 31 v. County of Cook
, 145 Ill. 2d 475, 480, 584 N.E.2d 116, 118 (1991).  We may relax the harsh mandates of the waiver doctrine if we feel that the particular issue would aid in maintaining a uniform body of precedent or if the interests of justice require the issue's consideration.  
American Federation of State, County & Municipal Employees, Council 31
, 145 Ill. 2d at 480, 584 N.E.2d at 118-19.  Because the issue presented to us is unique, we will consider it.

As the injured party, Skidmore argues that he should be allowed to raise matters of insurance policy ambiguity where that language has a direct impact upon his recovery. 

Safeco argues that Skidmore cannot argue that its policy language is vague and ambiguous because he is not a party to that contract.  Safeco carries the argument one extra step by arguing that Skidmore certainly cannot argue that the policies in question are ambiguous because both of its insureds executed affidavits in which they aver that they understood each of their policies to provide only $100,000 in coverage applicable to the Skidmore claim.  In other words, the insurer and the insureds agreed that only $100,000 in coverage (per policy) is applicable to the Skidmore claim.

Generally speaking, an insurer and its insured cannot agree to policy interpretations with the intent to keep an injured party from recovering under that policy.  
Reagor v. Travelers Insurance Co.
, 92 Ill. App. 3d 99, 102, 415 N.E.2d 512, 514 (1980).  All of the cases Skidmore cites in his argument of this point are cases where the policy-interpretation agreement at issue sought to completely void coverage for the injured party.  See, 
e.g.
, 
Reagor
, 92 Ill. App. 3d at 101, 415 N.E.2d at 513; 
France v. Citizens Casualty Co.
, 400 Ill. 55, 56, 79 N.E.2d 28, 29 (1948); 
Pratt v. Protective Insurance Co.
, 250 Ill. App. 3d 612, 614-15, 621 N.E.2d 187, 189 (1993).  

Additionally, many cases have held that an injured third party is allowed to bring suit directly against an insurer.  Many of the authorities Skidmore cites on this issue involve the injured party's statutory right to bring this direct action in cases where the injured party has obtained a judgment against a liable party and that liable party has declared bankruptcy or otherwise been declared insolvent.  215 ILCS 5/388 (West 1996); 
Scott v. Freeport Motor Casualty Co. of Freeport
, 392 Ill. 332, 335, 64 N.E.2d 542, 544 (1945); 
Simmon v. Iowa Mutual Casualty Co.
, 3 Ill. 2d 318, 320, 121 N.E.2d 509, 511 (1954); 
People ex rel. Terry v. Fisher
, 12 Ill. 2d 231, 237, 145 N.E.2d 588, 592 (1957).  The Illinois public policy behind these cases is specifically designed "to protect persons injured by the negligent operation of motor vehicles[] and *** confer[] rights which cannot be defeated after the accident by the concerted action of the insured and the insurer."  
People ex rel. Terry
, 12 Ill. 2d at 237, 145 N.E.2d at 592 (citing 
Scott
, 392 Ill. 332, 64 N.E.2d 542).  Although 
People ex rel. Terry v. Fisher
 dealt with a matter of discovery relative to the insurer's policy, the discussion of this issue was general.  In discussing the statute and the public policy it conveyed, our supreme court explained that this particular statutory enactment served a benevolent purpose and that depriving an injured party of his or her rights would "permit insurance companies to avoid their statutory obligation."  
People ex rel. Terry
, 12 Ill. 2d at 238, 145 N.E.2d at 593.  

All of the other cases Skidmore cites for the proposition that an injured third party can sue the liable party's insurer are declaratory judgment actions.  In all of the cited cases, the insurance company was seeking to have the court declare that they owed no financial responsibility to the insured regarding the accident or claim involving the injured third party.  
Gothberg v. Nemerovski
, 58 Ill. App. 2d 372, 208 N.E.2d 12 (1965); 
Reagor
, 92 Ill. App. 3d 99, 415 N.E.2d 512; 
Pratt v. Protective Insurance Co.
, 250 Ill. App. 3d 612, 621 N.E.2d 187 (1993); 
Society of Mount Carmel v. National Ben Franklin Insurance Co. of Illinois
, 268 Ill. App. 3d 655, 643 N.E.2d 1280 (1994); 
Chandler v. Doherty
, 299 Ill. App. 3d 797, 702 N.E.2d 634 (1998).  In a declaratory judgment setting, the injured party is a necessary party to the suit because he or she has a substantial right in the insurance policy's viability.  
Chandler
, 299 Ill. App. 3d at 805, 702 N.E.2d at 640.  The injured party's relationship with the liability insurer has been further characterized as that of a beneficiary.  
Reagor
, 92 Ill. App. 3d at 102-03, 415 N.E.2d at 514.  The public policy consideration at work in such situations is that liability insurance policies should operate to afford injured parties coverage.  
Reagor
, 92 Ill. App. 3d at 102, 415 N.E.2d at 514; 
Society of Mount Carmel
, 268 Ill. App. 3d at 661, 643 N.E.2d at 1285.  A declaration of noncoverage would eliminate a source of funds for the injured party.  
Society of Mount Carmel
, 268 Ill. App. 3d at 661, 643 N.E.2d at 1285.  Overall, these cases stand for the proposition that even though an injured party is not a party to the insurance contract, he or she will always be allowed to file a declaratory judgment action in order to determine the liable party's coverage pursuant to that insurance contract.  
E.g., Pratt
, 250 Ill. App. 3d at 618, 621 N.E.2d at 191.

Generally, Skidmore would be allowed to directly sue Safeco and thus assert policy claims that an insured could raise, in an effort to ascertain, and potentially obtain, coverage.  This case presents a slightly different issue in that Safeco is not completely denying coverage.  However, the public policy of this State reminds us that insurance is not necessarily a private matter between an insurer and its insured.  See 
Reagor
, 92 Ill. App. 3d at 102-03, 415 N.E.2d at 514.  The injured party's rights come into existence at the moment of the accident.  
Reagor
, 92 Ill. App. 3d at 103, 415 N.E.2d at 514.  The risk-spreading theories of liability insurance policies mandate that affected members of the public should be afforded the maximum protection possible in accord with fairness to the insurer.  
Reagor
, 92 Ill. App. 3d at 102, 415 N.E.2d at 514.  Even though Safeco is admitting $200,000 in coverage, one-third of the judgment Skidmore obtained would remain unsatisfied if Skidmore could not pursue his coverage issue against the tortfeasor's liability insurer.  While the cases Skidmore cites are more extreme in that the insurer was seeking to deny all coverage, the underlying rights that our courts have sought to protect and proclaimed as public policies remain the same.

In addition, we are troubled with the affidavits that Safeco presents as agreements between it and its insureds as to the coverage amounts available under its applicable policies.  While an insurer and its insured can certainly agree to applicable coverages in certain circumstances, we cannot abide this attempt by Safeco, Throgmorton, and Spencer to do so.  This is an agreement with implications reaching beyond the two parties to the contract.  Such an agreement could be contrary to Illinois law if the law is clear that coverage could otherwise be stacked.  The innocent injured third party would be directly impacted by such an agreement.  Sanctioning such an outcome would be unconscionable.

Accordingly, we conclude that despite Throgmorton's and Spencer's agreements with Safeco that only $100,000 in bodily injury liability coverage was available from each policy, Skidmore will be allowed to raise the issue of policy ambiguities.

We now turn to the coverage issue.

The trial court ultimately concluded that the $100,000-per-person-per-accident liability coverage of each Safeco policy could be stacked, resulting in $400,000 in coverage applicable to Skidmore's claim.  The stacking was authorized because the trial court found that there was an ambiguity contained within the policy language.

At issue are a clause detailing the "limits of liability" within the liability coverage section of the policy (the antistacking clause) and the declaration sheet that is incorporated into the antistacking clause.  This antistacking clause reads as follows:

"The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of 
bodily injury
 sustained by any one person in any one auto accident.

Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for 
bodily injury
 resulting from any one auto accident.

***

This is the most we will pay regardless of the number of:

1.  
Insureds
;

2.  Claims made;

3.  Vehicles or premiums shown in the Declarations; or

4.  Vehicles involved in the auto accident."  (Emphasis in original.)

The declarations page, incorporated into the antistacking clause by reference, is divided into five separate columns.  There are columns designated for the available coverages (liability, uninsured and underinsured motorists, comprehensive, collision, towing and labor, and loss of use), one column for the applicable coverages for each vehicle (what coverages the insured elected to purchase), and one column for the premium associated with the insured-elected coverage for each vehicle.  

The coverage at issue is bodily injury liability.  The Throgmorton and the Spencer policies each had liability bodily injury limits of $100,000 for each person and $300,000 for each occurrence.  For each of the four cars involved, there is a separate premium listed for that liability bodily injury coverage.  

Three fairly recent cases involve virtually identical provisions and declarations page setups.  All three concluded that the antistacking clause at issue was ambiguous and, thus, that the stacking of the bodily injury coverages for each vehicle was allowable.  We briefly review this case law.  

The insurance at issue in 
Allen v. Transamerica Insurance Co.
, 128 F.3d 462 (7th Cir. 1997), was underinsured-motorist coverage.  Without detailing the precise language utilized by Transamerica Insurance Company in its antistacking clause, we note that the language is so similar to that used by Safeco in this case as to be virtually indistinguishable.  See 
Allen
, 128 F.3d at 464.  Additionally, the column format for the two vehicles insured under the one Transamerica Insurance Company policy at issue was the same.  Specifically, each of the two cars had two columns–one for the insured-elected coverage and one for the premium associated with that coverage.  
Allen
, 128 F.3d at 464.  The federal court of appeals stated that the antistacking language, when read in isolation, was not ambiguous and would clearly preclude stacking.  
Allen
, 128 F.3d at 464.  But the court found that the policy begged this question: "[W]hat is the 
limit of liability
 referred to in the [antistacking] provision?"  (Emphasis in original.)  
Allen
, 128 F.3d at 464.  The Transamerica Insurance Company antistacking clause referred the reader to the declarations page to determine the amount of the limit.  
Allen
, 128 F.3d at 464.  Once the reader got to the declarations page, the ambiguity became apparent.  
Allen
, 128 F.3d at 464.  Citing 
dicta
 contained within the Illinois Supreme Court decision of 
Bruder v. Country Mutual Insurance Co.
, 156 Ill. 2d 179, 620 N.E.2d 355 (1993), and noting that it was a federal court sitting in diversity and had a duty to predict the actions of the Illinois Supreme Court, the court concluded that the antistacking clause, coupled with the declarations page, was ambiguous and that stacking was allowable.  
Allen
, 128 F.3d at 467.  The ambiguity was that the "limit of liability" could refer to the underinsured-motorist limit on motor vehicle number one, to the underinsured-motorist limit on motor vehicle number two, or to the two separate underinsured-motorist limits added together.  
Allen
, 128 F.3d at 464-65.

In 
Bruder v. Country Mutual Insurance Co.
, the policy at issue was a business automobile policy (the uninsured-motorist coverage), and although the particular policy covered two business trucks, the declarations sheet was set up such that the dollar amount of coverage applicable for each truck was listed in a single column in between the two covered trucks.  
Bruder
, 156 Ill. 2d at 188, 192, 620 N.E.2d at 360, 362.  In other words, the  coverages were only listed one time.  The supreme court went on to discuss what the effect would have been if Country Mutual Insurance Company had listed the coverages in two separate columns:

"It would not be difficult to find an ambiguity created by such a listing of the bodily injury liability limit for each person insured.  It could easily be interpreted that an insured should enjoy a total limit of $200,000 in coverage because a figure of $100,000 would be shown for each pickup truck.  There would be little to suggest in such a listing that the parties intended that coverage was to be limited to that provided for only one of the two pickup trucks.  It would be more reasonable to assume that the parties intended that, in return for the two premiums, two $100,000 coverage amounts were afforded."  
Bruder
, 156 Ill. 2d at 192, 620 N.E.2d at 362.

As previously stated, the federal appeals court decision in 
Allen v. Transamerica Insurance Co.
 was based upon the above-cited 
dicta
 from 
Bruder v. Country Mutual Insurance Co.
  Our court has also followed the 
Bruder
 decision on more than one occasion in similar factual contexts.  
Pekin Insurance Co. v. Estate of Goben
, 303 Ill. App. 3d 639, 707 N.E.2d 1259 (1999) (underinsured-motorist coverage); 
Yates v. Farmers Automobile Insurance Ass'n
, 311 Ill. App. 3d 797, 724 N.E.2d 1042 (2000) (underinsured-motorist coverage).

Accordingly, we conclude that the trial court did not err in its decision to allow the stacking of the liability coverages for all four Safeco-insured motor vehicles.  We reach this decision on slightly different grounds than the trial court, but as our review is 
de novo
, we can affirm the trial court's decision on other grounds.  See 
Estate of Johnson v. Condell Memorial Hospital
, 119 Ill. 2d 496, 502, 520 N.E.2d 37, 39 (1988).

Safeco argues that this line of cases is distinguishable because they involved underinsured- or uninsured-motorist coverages and not liability coverage as in this case.  While the difference in coverage is a factual distinction, we note that the insurer employed the same policy language for both the liability and the uninsured- or underinsured-motorist coverages.  The reasoning of the Illinois Supreme Court in 
Bruder v. Country Mutual Insurance Co.
 cannot be limited to uninsured- or underinsured-motorist coverage, and it must be applied in situations involving the identical policy language, located elsewhere in the policy.

Safeco also attempts to distinguish this case from all of the others on the basis that its policy contained a separate, more specific antistacking clause in its general-provisions portion of the policy.  That clause reads as follows:

"If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto."

While we agree that this clause could not be any more succinct, we are not swayed in our decision, because this is only a general provision, whereas the other antistacking clause, which incorporated the particular declarations sheet, is a more specific provision.  When a contract contains both specific and general provisions relating to the same subject, the specific provision controls.  
Willison v. Economy Fire & Casualty Co.
, 294 Ill. App. 3d 793, 800, 690 N.E.2d 1073, 1077 (1998).

For the foregoing reasons, the judgment of the circuit court of Jefferson County is hereby affirmed.

Affirmed.

WELCH and HOPKINS, JJ., concur.

                                      NO. 5-00-0249

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

GREG SKIDMORE, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Jefferson County.

)

v. )  No. 97-L-31

)

SUSAN THROGMORTON, )

 )

     Defendant, )

)

and )

)

SAFECO INSURANCE COMPANY, )  Honorable

)  James M. Wexstten,

     Intervening Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: June 29, 2001

___________________________________________________________________________________

Justices
: Honorable Clyde L. Kuehn, J.

Honorable Thomas M. Welch, J., and

Honorable Terrence J. Hopkins, J.,

Concur

___________________________________________________________________________________

Attorneys
 Michael J. Pitzer, Joseph T. Madrid, Rabbitt, Pitzer & Snodgrass, P.C., 800 Market

for
 Street, Suite 2300, St. Louis, MO 63101-2608

Appellant
 

___________________________________________________________________________________

Attorney
 Bruce D. Irish, Sam C. Mitchell and Associates, P.O. Box 280, 115 East Main Street,

for
 West Frankfort, IL 62896

Appellee
 

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 06/29/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.