SECOND DIVISION
DECEMBER 23, 2008

1-07-2601

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| DALIA PEREZ, | ) | No. 06 CH 12268 |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | |
| (Oscar Baeza and Miguel Espinoza, | ) | Honorable |
| | ) | Stuart Palmer, |
| Defendants). | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

Defendant Dalia Perez (Perez) appeals from an order of the circuit court of Cook County issued August 16, 2007, dismissing with prejudice her motion for judgment on the pleadings. Perez's motion alleged that the homeowner's insurance policy did not exclude coverage for a negligence claim (count II) of her lawsuit against the driver involved in the car accident that injured her on May 15, 2005. On appeal, Perez alleged that plaintiff State Farm Fire & Casualty Company (State Farm Casualty) has a duty to defend and indemnify because: (1) the homeowner's insurance policy provides coverage for the negligence claim (count II); and (2) the negligence claim (count II) does not allege bodily injury arising out of the ownership, maintenance, use, loading or unloading of the vehicle so as to trigger the motor vehicle exclusion. For the following reasons, we affirm.

BACKGROUND

On May 15, 2005, Perez was riding in a car driven by Oscar Baeza (Baeza) when he lost control of the vehicle and struck a tree. Perez, along with another passenger, Miguel Espinosa (Espinosa), was severely injured as a result of the crash. At the time of the accident, Baeza was insured by a homeowner's policy issued by State Farm Casualty to Oliverio Pizano (Pizano) and Alma Jungo (Jungo) for their residence at 225 S. Clifton Avenue, Elgin, Illinois. Baeza is the adult son of Pizano and Jungo and was living at their Elgin residence on May 15, 2005. An automobile insurance policy issued by State Farm Mutual Automobile Insurance Company (State Farm Auto) insured the vehicle involved in the accident. Both policies were in effect on May 15, 2005.

On October 7, 2005, Perez and Espinosa filed a civil action against Baeza in the circuit court of Cook County, seeking damages for injuries they sustained in the accident. The fifth amended complaint, filed August 10, 2006, alleged two counts against Baeza[1]. Count I alleged that Baeza negligently operated the vehicle while under the influence of alcohol (negligent operation claim). Count II alleged that Baeza negligently modified or altered the seats in the vehicle and failed to warn his passengers of the dangers and defects of the modified seats and safety restraint system (negligent modification claim).

Baeza then gave notice of the lawsuit to State Farm Auto and State Farm Casualty. State

---

[1]The lawsuit also named HTF Enterprises, Inc. (HTF), and Sparco Motor Sports, Inc. (Sparco), as defendants. The Perez-Espinosa complaint alleged that HTF engaged in wrongful conduct under the Dramshop Act (235 ILCS 5/6-21 (West 2004)) (count III) and was negligent (count VI). Strict liability (count IV) and negligence claims (count V) were alleged against Sparco.

1-07-2601

Farm Auto accepted the tender and is currently defending the lawsuit without a reservation of rights. State Farm Casualty, however, denied coverage to Baeza under the motor vehicle exclusion (exclusion) of the homeowner's policy.

On June 21, 2006, State Farm Casualty filed a complaint for declaratory judgment in the instant case against Perez, as well as Baeza and Espinoza, seeking a declaration that the homeowner's policy did not provide coverage to Baeza for the civil action brought by Perez and Espinosa against Baeza, and that it had no duty to defend or indemnify Baeza in the lawsuit.

Perez filed an answer to the declaratory judgment action, denying that the exclusion applied to bar coverage. Both Baeza and Espinosa failed to answer the complaint and default judgments were entered against them on November 14, 2006, and March 6, 2007, respectively.[2]

Perez subsequently filed a motion for judgment on the pleadings, alleging that the negligent modification claim (count II) was not excluded from coverage. State Farm Casualty filed a cross-motion for judgment on the pleadings alleging that, on the contrary, the negligent modification claim arose out of Baeza's ownership and use of the vehicle and was thus excluded from coverage under the policy. On August 16, 2007, the circuit court granted State Farm Casualty's motion for judgment on the pleadings, and denied Perez's motion, finding that the injuries arose out of the use and ownership of Baeza's car.

Perez now appeals the circuit court's August 16, 2007 judgment, arguing that the negligent

[2]Baeza and Espinosa are not parties to this appeal.

3

1-07-2601

modification claim (count II) did not fall under the homeowner's policy exclusion.[3]

ANALYSIS

This case stems from the defendant's appeal of the circuit court's judgment on the pleadings in favor of the plaintiff. We have proper jurisdiction over the appeal of final judgments entered by the circuit court and review *de novo* the circuit court's order in favor of the plaintiff's motion for judgment on the pleadings and the circuit court's construction of the insurance policy terms. 155 Ill. 2d R. 301; 210 Ill. 2d R. 303; <u>Pekin Insurance Co. v. Beu</u>, 376 Ill. App. 3d 294, 297, 876 N.E.2d 167, 170 (2007).

A judgment on the pleadings is appropriate "where the pleadings disclose no genuine issue of material fact and the movant is entitled to judgment as a matter of law." <u>Gillen v. State Farm Mutual Automobile Insurance Co.</u>, 215 Ill. 2d 381, 385, 830 N.E.2d 575, 577 (2005). All well-pleaded facts and reasonable inferences in the pleadings are taken as true. <u>Gillen v. State Farm Mutual Automobile Insurance Co.</u>, 215 Ill. 2d at 385, 830 N.E.2d at 577. Only facts apparent on the face of the pleadings, matters subject to judicial notice, and admissions in the record are considered by the court in ruling on a motion for judgment on the pleadings. <u>Gillen</u>, 215 Ill. 2d at 385, 830 N.E.2d at 577. Thus, in the absence of any issues of material fact, we must determine whether the defendant was entitled to judgment as a matter of law.

As an initial matter, we note that Illinois public policy dictates that insurance is "not

---

[3]On, July 13, 2007, the defendant conceded in her response to the plaintiff's motion for judgment on the pleadings and in reply to the plaintiff's response to her motion for judgment on the pleadings that the negligent operation claim (count I) of her complaint fell within the motor vehicle exclusion and thus is not an issue on appeal.

4

necessarily a private matter between an insurer and its insured," and as such, an injured party's rights against the liability insurer vests at the moment of the accident giving rise to the underlying claim. Skidmore v. Throgmorton, 323 Ill. App. 3d 417, 422, 751 N.E.2d 637, 641 (2001); Record-A-Hit, Inc. v. National Fire Insurance Co. of Hartford, 377 Ill. App. 3d 642, 645, 880 N.E.2d 205, 207 (2007); Reagor v. Travelers Insurance Co., 92 Ill. App. 3d 99, 102-03, 415 N.E.2d 512, 514 (1980). Such vested rights may not be defeated by the joint efforts of the insured and the insurer. Skidmore, 323 Ill. App. 3d at 421, 751 N.E.2d at 640; see also Pratt v. Protective Insurance Co., 250 Ill. App. 3d 612, 619, 621 N.E.2d 187, 192 (1993) ("[t]he insurer and the insured may not conspire to defeat the rights of an injured party"). The injured party's relationship with the liability insurer is that of a beneficiary, who becomes a real party in interest in the insurance contract at the time of the occurrence giving rise to his injuries. Skidmore, 323 Ill. App. 3d at 421, 751 N.E.2d at 641; Reagor, 92 Ill. App. 3d at 103, 415 N.E.2d at 514. While the policy of the State prohibits direct actions by an injured party against an insurer before judgment has been rendered against its insured, such policy is not violated as long as the issue of coverage is effectively severed from any issue of the insured's liability and the assessment of damages. Reagor, 92 Ill. App. 3d at 103-04, 415 N.E.2d at 515 ("the rationale underlying this policy is that disclosure of liability coverage at a trial against an insured for injuries resulting from his negligence constitutes prejudicial error").

Here, Perez's rights against State Farm Casualty, as an injured passenger, vested at the time of the car accident. The consequences of Baeza's failure to answer State Farm Casualty's complaint for declaratory judgment, which resulted in a default judgment against him, could not be imputed to Perez because her vested rights against State Farm Casualty may not be defeated by Baeza's

5

behavior. Because the issue of coverage by the homeowner's policy is severed from the issue of Baeza's liability in the underlying personal injury lawsuit filed by Perez, she has standing to defend herself in State Farm Casualty's complaint for declaratory judgment, in which she was named as a necessary party with sufficient interest in the controversy. See Record-A-Hit, Inc., 377 Ill. App. 3d at 645, 880 N.E.2d at 207 ("[a] tortclaimant in an underlying action has a substantial right in the viability of a policy of insurance that might be the source of funds available to satisfy the tort claim").

It is against this backdrop that we determine whether the homeowner's policy exclusion applied to bar coverage so as to render a judgment on the pleadings in favor of State Farm Casualty.

An insurer may not refuse to defend an underlying claim "unless the allegations in the underlying complaint clearly fail to state facts that bring the case within or potentially within the policy coverage." Beu, 376 Ill. App. 3d at 296, 876 N.E.2d at 170. The duty to defend is broader in scope than the duty to indemnity. Beu, 376 Ill. App. 3d at 296, 876 N.E.2d at 170. To determine an insurer's duty to defend its insured, we must compare the allegations in the underlying complaint with the terms of the policy. Beu, 376 Ill. App. 3d at 296, 876 N.E.2d at 170.

Policy construction functions to ascertain and honor the intention of the parties, as expressed in the policy language. Gillen, 215 Ill. 2d at 393, 830 N.E.2d at 582. Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured, and any doubts and ambiguities are resolved against the insurer. Beu, 376 Ill. App. 3d at 296, 876 N.E.2d at 170. Ambiguous terms in the policy include those that are prone to more than one reasonable meaning. Gillen, 215 Ill. 2d at 393, 830 N.E.2d at 582. However, unambiguous policy terms will be given

their plain and ordinary meaning and will be applied as written. Beu, 376 Ill. App. 3d at 296-97, 876 N.E.2d at 170. Furthermore, any undefined terms in the policy will be given their "plain, ordinary and popular meaning"–in other words, they are to be construed in light of the "average, ordinary, normal, reasonable person." Gillen, 215 Ill. 2d at 393, 830 N.E.2d at 582. Courts are also to narrowly read any policy provision that purports to exclude or limit coverage, and apply them only where the terms are "clear, definite, and specific." Gillen, 215 Ill. 2d at 393, 830 N.E.2d at 582.

State Farm Casualty argues it did not have a duty to defend under the exclusions listed in section II of the homeowner's policy issued to Baeza's parents, which state as follows:

"1.    Coverage  L  [Liability]  and  Coverage  M  [Medical
Payments to Others] do not apply to:

e.  **bodily injury** or **property damage** arising out of
the ownership, maintenance, use, loading and unloading of:

(2)  a **motor vehicle** owned or operated by or rented
or loaned to any **insured**."

The negligent modification claim (count II) of Perez's underlying tort claim against Baeza alleged the following:

"4.  It was the duty of the defendant, OSCAR BAEZA, to use
due care and caution in designing, modifying and/or altering said
vehicle so that others would not be injured.

5. Despite said duty and in direct violation thereof, defendant,

7

OSCAR BAEZA, committed one or more or all of the following negligent acts:

(a) designed, modified and/or altered the vehicle with seats that were inadequate for restraining passengers;

(b) failed to design, modify and/or alter the vehicle with proper safety belts and restraints;

(c) failed to warn passengers of the risks, dangers and defects of the seats[;]

(d) failed to warn passengers of the risks, dangers and defects of the safety restraint system[;]

(e) was otherwise careless and negligent.

6. As a direct and proximate result of one or more or all of the aforesaid negligent acts, the plaintiff, DALIA PEREZ, sustained serious and permanent injuries."

We start by comparing the language of the policy exclusion with the negligent modification claim of Perez's underlying lawsuit against Baeza.

Perez argues that the exclusion was inapplicable because the negligent modification claim did not allege bodily injury arising out of the ownership, maintenance, use, loading or unloading of Baeza's car. Specifically, she argues that the allegations under the negligent modification claim were "wholly independent" from the allegation that Baeza negligently operated the vehicle, and, for support, relies on Mount Vernon Fire Insurance Co. v. Heaven's Little Hands Day Care, 343 Ill. App.

8

3d 309, 795 N.E.2d 1034 (2003), and United Services Automobile Ass'n. v. Dare, 357 Ill. App. 3d 955, 830 N.E.2d 670 (2005), which she contends were more instructive than Northbrook Property & Casualty Co. v. Transportation Joint Agreement, 194 Ill. 2d 96, 741 N.E.2d 253 (2003), which was relied upon by the circuit court in this case.

In Northbrook, many students were injured and killed when a train collided with a school bus operated by the local school districts. Northbrook, 194 Ill. 2d at 97, 741 N.E.2d at 254. The insurer of the school districts sought a declaration that it had no duty to defend against the underlying lawsuits filed as a result of the accident. Northbrook, 194 Ill. 2d at 98, 741 N.E.2d at 254. The policy at issue excluded bodily injury " 'arising out of the ownership, maintenance, use or entrustment to others of any [motor vehicle] owned or operated or rented or loaned to any insured.' " Northbrook, 194 Ill. 2d at 98, 741 N.E.2d at 254. The Illinois Supreme Court reversed the appellate court's decision and held that the insurer had no duty to defend because the allegations in the underlying complaints failed to state facts that bring the cases within or potentially within the policy coverage. Northbrook, 194 Ill. 2d at 98-99, 741 N.E.2d at 254. It stated that allegations against the school districts–namely, that they poorly planned bus routes and failed to warn bus drivers of potential hazards along those routes–were only "rephrasings" of the fact that the injuries arose out of the school districts' use of the motor vehicle and, thus, could not be said to be " 'wholly independent of any negligent operation of the bus.' " Northbrook, 194 Ill. 2d at 99, 741 N.E.2d at 254-55.

The appellate court arrived at a different conclusion in Mount Vernon when it ruled that the insurer had a duty to defend an underlying complaint against its insured. Mount Vernon, 343 Ill.

App. 3d at 309, 795 N.E.2d at 1034. In Mount Vernon, an infant died from heat stroke when a day-care center employee left the infant unattended in a van for more than eight hours. Mount Vernon, 343 Ill. App. 3d at 311, 795 N.E.2d at 1036. The parents of the infant sued the day-care center, alleging wrongful death claims based on theories of negligent operation of a motor vehicle and negligent supervision. Mount Vernon, 343 Ill. App. 3d at 312, 795 N.E.2d at 1037. The policy insuring the day-care center excluded from coverage bodily injury " 'arising out of the ownership, maintenance, use or entrustment to others of any [auto] owned or operated by or rented or loaned to any insured.' " Mount Vernon, 343 Ill. App. 3d at 313, 795 N.E.2d at 1038. The court factually distinguished the Northbrook case because the Mount Vernon infant's death occurred when the van was not in use, a fact which was attenuated from the actual legitimate purpose of the van. Mount Vernon, 343 Ill. App. 3d at 320, 795 N.E.2d at 1043. It further reasoned that the death arose from nonvehicular conduct by day-care center employees in failing to take a head count of the children. Mount Vernon, 343 Ill. App. 3d at 319, 795 N.E.2d at 1043. The court then held that liability for the death did not arise out of the use of the van because the vehicle served only as the situs of the infant's death and was not being used "in a manner consistent with its customary use" at the time of the occurrence. Mount Vernon, 343 Ill. App. 3d at 319-20, 795 N.E.2d at 1043. As an example, if the day-care center employee had left the infant in his car seat on the ground next to the van in the parking lot, the infant may also have suffered heat stroke. In that scenario, clearly the vehicle would not have been "in use."

In further support of its position, the Mount Vernon court cited State Farm Mutual Automobile Insurance Co. v. Pfiel, 304 Ill. App. 3d 831, 710 N.E.2d 100 (1999). In Pfiel, the mother

of a murder victim, who was stabbed by a hunting knife in an automobile, sued the murderer and his parents for damages based on negligent supervision and negligent entrustment. Mount Vernon, 343 Ill. App. 3d at 317, 795 N.E.2d at 1041. Coverage under the automobile insurance policy extended to damages for bodily injury " 'resulting from the ownership, maintenance or use' " of the car. Mount Vernon, 343 Ill. App. 3d at 317, 795 N.E.2d at 1041; Pfiel, 304 Ill. App. 3d at 833, 710 N.E.2d at 103. This court found that the way the murderer "used" the car to kill the victim was " 'attenuated from the actual legitimate purpose of an automobile and, therefore, not contemplated by the parties to the insurance contract.' " Mount Vernon, 343 Ill. App. 3d at 318, 795 N.E.2d at 1042, quoting Pfiel, 304 Ill. App. 3d at 836-37, 710 N.E.2d at 105. The Pfiel court reasoned that a "causal relation or nexus must exist *** between the accident or injury and the ownership, use or maintenance of the vehicle in order for the accident or injury to come within the policy coverage" and subsequently found that no such causal relations existed to trigger coverage because the involvement of the vehicle was only incidental to the victim's injuries. Mount Vernon, 343 Ill. App. 3d at 317, 795 N.E.2d at 1041; Pfiel, 304 Ill. App. 3d at 836-37, 710 N.E.2d at 104-05.

We find that the facts of the case at bar are more analogous to those in Northbrook than in Mount Vernon and Pfiel. Here, Perez's negligent modification claim against Baeza arose from injuries she sustained while the car was being used in a manner consistent with its customary use. The alleged problem with the modified seats and safety restraint system, and Baeza's alleged failure to warn Perez about these alterations, only created a risk to Perez, as was the case here, when the car was in motion and used as a mode of transportation–an actual legitimate purpose of the car contemplated by the parties to the insurance contract. Because the exclusion in the homeowner's

11

policy did not define the term "use," we must give it its plain, ordinary and popular meaning. We thus construe it in light of the reasonable person standard and note that a reasonable person would find the phrase "use of a motor vehicle" to mean driving and operating a vehicle. We cannot think of a more inherent activity one may do with a car than to drive it. See Allstate Insurance Co. v. Smiley, 276 Ill. App. 3d 971, 977, 659 N.E.2d 1345, 1350 (1995) ("[t]he terms of an insurance policy must be read according to their plain and ordinary meaning, and a court should not search for an ambiguity where there is none"). Baeza was driving the car at the time of the accident, an activity that squarely falls under the "use of a motor vehicle" language in the exclusion and was an actual legitimate purpose of the car. Unlike Pfiel, a causal relation existed here between Perez's injuries and Baeza's use of the car, causing her injuries to come within the policy's exclusion because the involvement of the car was not incidental to Perez's injuries, it was the cause of her injuries. Further, the negligent modification claim was only a rephrasing of the fact that Perez's injuries arose out of Baeza's use of the car and, thus, was not wholly independent of the negligent operation of the car. Therefore, we hold that the exclusion applies and State Farm Casualty has no duty to defend Baeza in the underlying lawsuit.

Perez posits that the Dare case was the most instructive to the case at bar. Dare, 357 Ill. App. 3d at 955, 830 N.E.2d at 670. We disagree.

In Dare, the insurer sought a declaration that it had no duty to defend a lawsuit against its insured homeowner, who sold a horse trailer with an allegedly defective horse restraint to the plaintiff. Dare, 357 Ill. App. 3d at 956, 830 N.E.2d at 672. The insurance policy's exclusion stated that medical payments to others do not apply to bodily injury arising out of " 'the ownership,

12

maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an Insured.' " Dare, 357 Ill. App. 3d at 959, 830 N.E.2d at 674. The appellate court in Dare held that the exclusion did not apply because there were some allegations in the underlying complaint that were potentially within the policy's coverage. Dare, 357 Ill. App. 3d at 964, 830 N.E.2d at 678. Specifically, allegations that the restraint was defective, and that was designed, modified, equipped, marketed, distributed, and sold by the insured to the plaintiff, were separate and distinct claims from the allegations related to the insured's ownership and maintenance of the trailer. Dare, 357 Ill. App. 3d at 965, 830 N.E.2d at 679. The Dare court, in construing the policy in favor of the insured, found the terms "maintenance" and "ownership" ambiguous because it was unclear whether the insured had to own the trailer at the time of the plaintiff's injuries and whether the meaning of "maintenance" departed from the common meaning of the word, as the insurer suggested. In Dare, the trailer had been sold by the original owner by the time the injuries giving rise to the lawsuit occurred.

We do not find the Dare case helpful in our analysis because the facts in the instant case are distinguishable from the Dare facts. It is undisputed that Baeza owned the car he was driving when Perez was injured. Moreover, unlike Dare, there were no allegations of the sale of negligently modified products. Rather, Perez alleged that Baeza negligently operated the car, negligently modified its seat restraint system, and failed to warn her about the dangers of such–all of which fall under the unambiguous "use of a motor vehicle" exclusion of the homeowner's policy. Contrary to Perez's assertion, neither of these allegations in Perez's negligent modification claim was a separate and distinct claim from the allegations related to Baeza's negligent use and operation of the car.

13

Perez further argues that State Farm Casualty had a duty to defend based on this court's analysis in United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co., 152 Ill. App. 3d 46, 504 N.E.2d 123 (1987) (USF&G). In USF&G, a child being transported in a station wagon operated by a day-care center was injured when a passenger door opened and she fell from the moving vehicle. USF&G, 152 Ill. App. 3d at 47, 504 N.E.2d at 124. The parents of the injured child sued the day-care center, alleging in two counts that its failure to provide sufficient and adequate supervision of the children, and its failure to operate and maintain the station wagon properly were both proximate causes of the injuries. USF&G, 152 Ill. App. 3d at 47, 504 N.E.2d at 124. At the time of the occurrence, a policy issued by USF&G to the day-care center was in effect, which excluded " 'bodily injury arising out of the ownership, maintenance, operation [or] use of (1) any automobile *** owned or operated by *** any insured, or (2) any other automobile *** operated by any person in the course of his employment by an insured.' " USF&G, 152 Ill. App. 3d at 48, 504 N.E.2d at 125. The USF&G court reasoned that the negligent supervision claim, as a proximate cause of the child's injuries, was not excluded under the policy. The court specifically held:

> "If a proximate cause of an injury is within the included coverage of
> an insurance policy, the included coverage is not voided merely
> because an additional proximate cause of the injury is a cause which
> is excluded under the policy. Thus, in order for an injury to be
> excluded from coverage under an insurance policy, the injury must
> have been caused solely by a proximate cause which is excluded
> under the policy." USF&G, 152 Ill. App. 3d at 48, 504 N.E.2d at

14

125.

Under the reasoning in USF&G, Perez argues that while the negligent operation claim (count I) against Baeza was excluded under the policy, it did not serve to void the included coverage of the negligent modification claim (count II) because Perez's injuries were not caused solely by Baeza's negligent operation of the car. State Farm Casualty argues that a proximate cause analysis is irrelevant in contract construction and that Perez's reliance on USF&G is misplaced because the supreme court in Northbrook rejected importing tort principles into a contract construction context. We do not agree with either of these contentions suggested by each party.

First, Northbrook did not overrule USF&G. As discussed above, the Northbrook court held that allegations against the school districts for poorly planning bus routes and for failing to forewarn bus drivers of potential dangers of those routes were only rephrasings of the previously rejected assertions and could not be deemed " 'wholly independent of any negligent operation of the bus.' " Northbrook, 194 Ill. 2d at 99, 741 N.E.2d at 254-55. In so holding, the supreme court basically said that the school districts' allegedly poor planning and failure to warn the bus drivers were not proximate causes of the injuries. No matter how poorly planned, a bus route could not, on its own, proximately cause injuries to the students without the actual operation of the bus. Likewise, failure to warn the bus drivers of the potential hazards of the chosen bus routes was not a proximate cause of injuries to the students. In reaching its conclusion in Northbrook, the Illinois Supreme Court considered some principles of tort law when construing the insurance contract. See Mount Vernon, 343 Ill. App. 3d at 320, 795 N.E.2d at 1043 ("At no time in Northbrook did the supreme court state that it was overruling all cases in Illinois that have applied tort principles when interpreting insurance

15

contracts. *** [T]he supreme court was merely criticizing [the appellate] court's ruling in Northbrook and was not overruling a long line of Illinois cases").

Secondly, USF&G should be analyzed in conjunction with Allstate Insurance Co. v. Pruitt, 177 Ill. App. 3d 407, 532 N.E.2d 401 (1988). See Allstate Insurance Co. v. Smiley, 276 Ill. App. 3d 971, 981, 659 N.E.2d 1345, 1353 (1995) ("USF&G, however, is completely understood only when it is read in conjunction with [Pruitt]"); Western American Insurance Co. v. Tovar, No. 01-C-2747, slip op. at 8, (N.D. Ill. February 21, 2002), quoting Transamerica Insurance Co. v. South, 95 F.2d 321, 330 (7th Cir. 1992) ("In the Seventh Circuit's view, Pruitt 'limit[ed] the applicability of the [USF&G] principle to cases in which the two causes of injury are wholly independent of one another' "). In Pruitt, a minor driving a minibike struck and injured the plaintiff. Pruitt, 177 Ill. App. 3d at 408, 532 N.E.2d at 402. The underlying complaint included allegations against the minor for negligence and recklessness, and allegations against the minor's father for negligent supervision of his son. Pruitt, 177 Ill. App. 3d at 408, 532 N.E.2d at 402. The insurance policy at issue excluded coverage for bodily injury " 'arising out of the ownership, maintenance, use, loading or unloading of any motorized land vehicle or trailer.' " Pruitt, 177 Ill. App. 3d at 409, 532 N.E.2d at 402. The court held the exclusion applicable because the plaintiff's theory of recovery against the father–negligent supervision–was based solely on the minor's ownership and operation of the minibike. Pruitt, 177 Ill. App. 3d at 411, 532 N.E.2d at 404. Because liability could not be imposed on the father without the minor's alleged negligent use of the vehicle, the exclusion applied to bar coverage. Pruitt, 177 Ill. App. 3d at 413, 532 N.E.2d at 405. Negligent supervision in the USF&G case could have been the sole cause of the alleged injury even if no negligent vehicle use existed;

whereas the father's negligent supervision in Pruitt could not have been the sole cause of the alleged injury because liability against the father could not stand alone apart from the minor's negligent operation of the minibike. See, *e.g.*, Tovar, slip op. at 4 (claimant's injuries in [USF&G] could have been caused by negligent supervision apart from the operation of the vehicle–i.e., "the center's failure to prevent another child from pushing her from the car").

Here, the negligent modification claim was based solely on the negligent operation claim, which fell under the policy exclusion. No matter how negligent Baeza was in modifying the seats and seat belt restraint system, the modifications could not, on their own, proximately cause injuries to Perez without the actual operation of the car. Likewise, Baeza's alleged failure to warn Perez about those modifications was not a proximate cause of the injuries without the alleged negligent operation of the car that resulted in the car striking a tree. We do not disagree with the USF&G principle, cited by Perez, that where both a covered and uncovered cause are alleged in a complaint, the covered cause is not voided merely because the uncovered cause is also an additional proximate cause of the injury. However, as in Pruitt, the negligent modification claim in Perez's underlying complaint was not a covered cause because it was based solely on Baeza's alleged negligent use and operation of the car. Therefore, we hold that the exclusion applies to bar coverage and State Farm Casualty has no duty to defend Baeza in the underlying complaint.

State Farm Casualty's complaint for declaratory judgment sought a declaration that it had neither a duty to defend nor indemnify Baeza in the underlying complaint filed by Perez. We hold that State Farm Casualty has no duty to defend or indemnify Baeza. Steadfast Insurance Co. v. Caremark Rx, Inc., 359 Ill. App. 3d 749, 762, 835 N.E.2d 890, 901 (2005) (quoting Freemont

Casualty Insurance Co. v. Ace-Chicago Great Dane Corp., 317 Ill. App. 3d 67, 73, 739 N.E.2d 85, 89 (2000) (" '[a]n insured's duty to defend *** is broader than its duty to indemnify' " and " 'where no duty to defend exists, no duty to indemnify could ever exist' "), and citing Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 398, 620 N.E.2d 1073, 1081 (1993)). We affirm the circuit court's order granting the plaintiff's motion for judgment on the pleadings and denying the defendant's motion for judgment on the pleadings.

Affirmed.

KARNEZIS, P.J., and QUINN, J., concur.