No. 3-10-0006

Filed November 22, 2010-Correction

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| MAXUM INDEMNITY COMPANY, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit |
| Plaintiff-Appellant, | ) | LaSalle County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| DON AND BETTY GILLETTE d/b/a | ) | No. 09-MR-113 |
| GILLETTE PARADE PRODUCTS, | ) | |
| CECILIA KALER and HOWARD | ) | |
| KALER, | ) | |
| | ) | The Honorable |
| Defendants-Appellees. | ) | Joseph P. Hettel, |
| | ) | Judge, Presiding. |

JUSTICE McDADE delivered the opinion of the court:

This appeal arises from a declaratory judgment action filed in the circuit court of LaSalle County to resolve insurance coverage issues. Plaintiff, Maxum Indemnity Company, appeals arguing that the court erred in determining that it owed a duty to defend defendant, Don & Betty Gillette, d/b/a Gillette Parade Products. We reverse and remand for further proceedings.

FACTS

Defendant is engaged in the business of preparing, providing and transporting parade floats for compensation. Plaintiff issued a commercial liability policy (the policy) to defendant with an effective policy period from October 10, 2007, through October 1, 2008. The policy

provides in pertinent part:

> "a. We will pay those sums that the Insured becomes legally obligated to pay as 'damages' because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend the Insured against any 'suit' seeking those 'damages.'  However, we will have no duty to defend the Insured against any 'suit' seeking 'damages' for 'bodily injury' or 'property damage' to which this insurance does not apply.

* * *

> b. This insurance policy applies to 'bodily injury' and 'property damage' only if:
>
> > (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and
> >
> > (2) The 'bodily injury' or 'property damage' takes place during the policy period."

The policy contains an "Aircraft, Auto or Watercraft" exclusion (auto exclusion) which excludes coverage for:

> " 'Bodily injury' or 'property damage' arising out of the ownership maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any Insured, including the supervision, hiring,

employment, training or monitoring of, or failure to warn anyone in connection with, the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft. Use includes operation and 'loading or unloading.' "

The policy defines "auto" as:

"[A] land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment."

On August 3, 2008, Cecilia Kaler was a passenger on a parade float owned and operated by defendant. The parade float at issue was being pulled by defendant, by way of its agent driver, on a public road. While being pulled, Kaler was thrown from the float.

On April 24, 2009, Kaler filed a lawsuit against defendant alleging that defendant was guilty of one or more of the following negligent acts:

"a. Provided a parade float in an unsafe, defective and dangerous condition in that there were no side rails to prevent passengers thereon from being thrown from the float,

b. Provided a parade float in an unsafe, defective and dangerous condition in that there were insufficient hand rails for passengers to prevent them from being thrown from the float,

c. Permitted and allowed *** KAILER [*sic*] to sit upon the defective and unsafe float when they knew or should have known that the float provided inadequate safety devices to prevent passengers from being thrown from the float,

3

d. Failed to warn *** KAILER [*sic*] of the defective and unsafe condition of the float.

e. Pulled the float on a public way when the float was in an unsafe condition so as to endanger passengers thereon,

f. Failed to have the float equipped with a retaining device to prevent passengers from being thrown onto the pavement,

g. Failed to provide a safe and competent driver."

The complaint also alleged that defendant, by and through their agent driver, was guilty of one or more of the following negligent acts:

"a. Pulled the float at a speed greater than reasonable,

b. Pulled the float at an excessive speed so that when pulled over a bump in the road, caused the float to violently lunge and buck,

c. Failed to decrease the speed at which the float was being pulled when he saw or should have seen the bumpy nature of the pavement ahead,

d. Failed to keep a proper look-out ahead for pavement imperfections that could or might cause the float to lunge and buck,

e. Failed to proceed cautiously when he saw or should have seen pavement imperfections ahead,

f. Failed to see and observe pavement imperfections ahead,

g. Swerved the float suddenly, when this movement could

4

not be made with reasonable safety to passengers thereon."

On June 3, 2009, plaintiff filed a declaratory judgment action seeking a determination that it was not required to defend and/or indemnify defendant Gillette in the Kaler lawsuit. In lieu of answering plaintiff's complaint, defendant filed a motion for judgment on the pleadings. Upon hearing argument, the circuit court denied defendant's motion as to the duty to indemnify, finding that the issue was premature. The court, however, granted defendant's motion in part, finding that plaintiff owed a duty to defend defendant. Specifically, the court found that Kaler's complaint involved a parade float, not an auto. The court also noted that Kaler's complaint contained separate allegations pertaining to how the float was built, which did not relate in any way to an auto. Thus, the court concluded that the auto exclusion found in the policy did not apply. Plaintiff now appeals the court's finding that it owes a duty to defend defendant.

ANALYSIS

Plaintiff argues that the circuit court erred in finding that it owed a duty to defend defendant. Plaintiff presents two specific arguments in support of this claim. First, plaintiff contends that the "parade float clearly falls within the definition of an 'auto,' as *** defined by the policy." Plaintiff also contends that "Kaler's allegations that [defendant] provided the parade float in an alleged unsafe and defective condition, failed to warn of the unsafe conditions, and failed to provide a safe and competent driver to pull the float, are merely a rephrasing of the fact that the claimant's injuries arose out of the insured's use of the 'auto' [pulling the float], and thus, are not wholly independent of the negligent operation of the 'auto.' "

The supreme court in *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 620 N.E.2d 1073 (1993), explained the principles courts of review should apply when

5

called to interpret an insurance policy and determine whether an insurer owes a duty to defend its insured its terms. Specifically, the court stated:

"The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court ***. [Citations.] In construing an insurance policy, the primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the agreement. [Citations.] To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract. [Citations.] If the words in the policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. [Citation.] The court will not search for ambiguity where there is none. [Citation.]

* * *

* * * [I]n determining whether an insurer has a duty to defend its insured, the court must look to allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy. [Citation.] If the facts alleged in the underlying complaint fall within, or potentially within,

the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action. [Citation.] The insurer's duty to defend is much broader than its duty to indemnify its insured." *Crum*, 156 Ill. 2d at 391-94, 620 N.E.2d at 1077-79.

Initially, we examine plaintiff's claim that the "parade float clearly falls within the definition of an 'auto,' as *** defined by the policy." Specifically, plaintiff argues that "at an absolute minimum, a parade float, which is pulled by a vehicle, would be categorized as a trailer, and thus would fall squarely within the definition of 'auto.' " We agree.

Again, the policy defines "auto" as "a land motor vehicle, *trailer* or semi-trailer designed for travel on public roads." (Emphasis added.) Because the policy does not define the term "trailer," we must give it its plain, ordinary and popular meaning. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 115, 607 N.E.2d 1204, 1215 (1992). " ' "Usual and ordinary meaning" has been stated variously to be that meaning which the particular language conveys to the popular mind, to most people, to the average, ordinary, normal [person], to a reasonable [person], to persons with usual and ordinary understanding, to a business[person], or to a lay[person].' " *Outboard Marine*, 154 Ill. 2d at 115, 607 N.E.2d at 1216, quoting 2 Couch on Insurance 2d §15:18 (rev. ed. 1984).

Merriam-Webster's Online dictionary (Merriam) defines the term "trailer" as a "nonautomotive vehicle designed to be hauled by road as *** a vehicle for transporting something." Merriam-Webster Online Dictionary 2010, <u>available at</u> <u>www.merriam-webster.com/dictionary/trailer</u>. Here, we find the float constitutes a "trailer" as

7

contemplated by the policy due to the fact that it was a nonautomotive vehicle being pulled on a public road by an automobile while transporting passengers and displays. We believe this fact also supports the conclusion that the float was designed "for travel on public roads" as contemplated by the policy. The trial court itself recognized that trailers used for travel on public roads are frequently converted to parade floats. To the popular mind, to most people, to ordinary laypersons, "trailer" connotes a parade float. Thus, we find the float falls within the definition of an "auto" as defined by the policy. This determination, however, does not end our inquiry as we are still left with the question of whether the underlying complaint's defective condition claims fall within the scope of the auto exclusion.

We begin with the principle that if the underlying complaint alleges several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy. See *National Union Fire Insurance Co. of Pittsburgh v. Glenview Park District*, 158 Ill. 2d 116, 124, 632 N.E.2d 1039, 1042-43 (1994). Clearly, Kaler's claims regarding negligent operation of the "auto"/float fall within the scope of the auto exclusion. Both the trial court and defendant, however, believe that plaintiff still owes a duty to defend due to the fact that Kaler's defective condition claims do not allege bodily injury arising "out of the ownership maintenance, use or entrustment to others" of the "auto"/float. We disagree.

We find the recent holding in *State Farm § Fire Casualty Co. v. Perez*, 387 Ill. App. 3d 549, 899 N.E.2d 1231 (2008), to be instructive. The insurer in *Perez* sought a declaratory judgment that a homeowner's policy did not provide coverage for a civil action arising from a traffic accident. The driver was an insured under the homeowner's policy, but the policy excluded coverage for claims arising out of the use of a motor vehicle. The passenger filed a complaint

8

against the driver alleging that the driver: (1) negligently operated the vehicle, and (2) negligently modified the vehicle's seats and restraint system, leading to the passenger's injuries in the accident. On appeal, the passenger argued that the motor vehicle exclusion found in the homeowner's policy was inapplicable because the negligent modification claim did not allege bodily injury arising out of the ownership, maintenance, use, loading or unloading of the driver's vehicle. Specifically, the passenger alleged that the negligent modification allegations were "wholly independent" from the allegation that the driver negligently operated the vehicle. In rejecting the passenger's argument the court stated:

> "Here, [the passenger's] negligent modification claim against [the driver] arose from injuries she sustained while the car was being used in a manner consistent with its customary use. The alleged problem with the modified seats and safety restraint system, and [the driver's] alleged failure to warn [the passenger] about these alterations, only created a risk to [the passenger], as was the case here, when the car was in motion and used as a mode of transportation -- an actual legitimate purpose of the car contemplated by the parties to the insurance contract. Because the exclusion in the homeowner's policy did not define the term 'use,' we must give it its plain, ordinary and popular meaning. We thus construe it in light of the reasonable person standard and note that a reasonable person would find the phrase 'use of a motor vehicle' to mean driving and operating a vehicle. We cannot think of a more

9

inherent activity one may do with a car than to drive it. [Citation.] *** [The driver] was driving the car at the time of the accident, an activity that squarely falls under the 'use of a motor vehicle' language in the exclusion and was an actual legitimate purpose of the car. *** [A] causal relation existed here between [the passenger's] injuries and [the driver's] use of the car, causing her injuries to come within the policy's exclusion because the involvement of the car was not incidental to [the passenger's] injuries, it was the cause of her injuries. Further, the negligent modification claim was only a rephrasing of the fact that [the passenger's] injuries arose out of [the driver's] use of the car and, thus, was not wholly independent of the negligent operation of the car. Therefore, we hold that the exclusion applies and [the insurer] has no duty to defend [the driver] in the underlying lawsuit."

*Perez*, 387 Ill. App. 3d at 556-57, 899 N.E.2d at 1238.

Here, Kaler's defective condition claims arose from injuries she sustained while the "auto"/float was being used in a manner consistent with its customary use. Kaler's entire complaint revolves around her being "thrown from the float" while the float was being "pulled." In light of these alleged facts, we find the alleged defective condition only created a risk to her when the float was in motion. Clearly, a causal relation exists between Kaler's injuries and the use of the "auto"/float. We therefore find that the defective condition claims are not wholly independent of the alleged negligent operation or use of the float. Accordingly, we hold that the

10

auto exclusion applies and plaintiff has no duty to defend defendant in the underlying lawsuit.

For the foregoing reasons, we reverse the judgment of the circuit court of LaSalle County and remand for further proceedings.

Reversed and remanded.

CARTER and SCHMIDT, JJ., concur.