STATE FARM FIRE AND CASUALTY COMPANY, as Subrogee of Quality Storage Products, Inc., Plaintiff, v. JOHN J. RICKHOFF SHEET METAL COMPANY, Defendant and Third-Party Plaintiff-Appellant (Meridian Mutual Insurance Company *et al.*, Third-Party Defendants-Appellees).

First District (3rd Division) No. 1—08—1933

Opinion filed August 19, 2009.

Peter C. Morse and Jeffrey A. Siderius, both of Morse Bolduc & Dinos, of Chicago, for appellant.

Matthew J. Egan, Scott L. Howie, and Cynthia H. Alkhouja, all of Pretzel & Stouffer Chtrd., of Chicago, for appellee Meridian Mutual Insurance Company.

Panos T. Topalis and G. Christopher Slick, both of Tribler, Orpett & Meyer, P.C., of Chicago, for appellee Horton Group, Inc.

JUSTICE THEIS delivered the opinion of the court:

Defendant and third-party plaintiff, John J. Rickhoff Sheet Metal Co. (Rickhoff), appeals from the order of the circuit court of Cook County dismissing its third-party complaint against third-party defendants, Meridian Mutual Insurance Co. (Meridian) and the Horton Group, Inc. (Horton), on the motions of Meridian and Horton, which were both filed pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2006)) (the Code). On appeal, Rickhoff contends that the circuit court erred in dismissing its third-party complaint for breach of an insurance contract against Meridian because it was not procedurally barred by Meridian's prior declaratory judgment against Rickhoff's additional insured, Quality Storage Products, Inc. Rickhoff also contends that the circuit court erred in dismissing its third-party complaint against Horton because its claims against Horton were not barred by the statute of limitations for insurance producers (735 ILCS 5/13—214.4 (West 2004)). For the following reasons, we affirm.

The following facts and procedural history are relevant to this appeal. Before relating them, we must note that the procedural history of this case is convoluted and involves no less than five layers of litigation. We will accordingly present the facts and procedural history as orderly and chronologically as possible.

In 2000, Quality Storage Products, Inc. (Quality), sold an overhead conveyor to another company, ITW Signode. Quality contracted Rickhoff to install the equipment for ITW Signode. Before the installation had been completed, in March of 2000, an employee of ITW Signode named Rufus Coleman was injured by the equipment. In early 2002, Coleman sued Quality and Rickhoff for his injuries.

Quality and Rickhoff had been working together for more than a decade, and during the course of that relationship, they had a verbal agreement that whenever Rickhoff performed a job for Quality, Rickhoff would name Quality as an additional insured on its general liability policy. At the time in question, Meridian was Rickhoff's general liability insurer, and Horton was Rickhoff's insurance agent. Sometime prior to commencing work on the Quality-ITW Signode project, Rickhoff requested that Horton provide Quality with a certificate of insur-

ance naming Quality as an additional insured under Rickhoff's policy with Meridian. Horton had issued Rickhoff a certificate of insurance on September 30, 1999, naming Quality and Nabisco, Inc., as "additional insureds" with respect to "general liability only."

Quality accordingly requested defense and indemnification from Meridian when Coleman filed his personal injury action in 2002. However, Meridian denied Quality coverage. Sometime later in 2002, Meridian also filed an action against Quality seeking a declaratory judgment that it did not have a duty to defend Quality. In that action, Meridian claimed that because there was no written agreement between Quality and Rickhoff, according to the terms of Rickhoff's insurance policy, Quality could not be named as an additional insured.

In February 2004, Quality filed a counterclaim for contribution and a claim for breach of contract to procure insurance against Rickhoff in the Coleman litigation. Therein, Quality alleged that if it were found liable for Coleman's injuries, its liability was proximately caused by Rickhoff's negligence. Quality also alleged that during its 10-year course of dealing with Rickhoff, the two firms had a "long-standing agreement" that anytime Quality hired Rickhoff as a subcontractor, Rickhoff would name Quality as an additional insured on its liability insurance. However, when Quality tendered defense of the Coleman matter to Meridian, Meridian refused to cover it, maintaining that Rickhoff's policy did not provide for the type of insurance in question. Thus, Quality maintained Rickhoff breached their long-standing agreement by failing to procure appropriate insurance.

In August 2004, Meridian filed a motion for summary judgment in the declaratory judgment action. In that motion, Meridian reiterated that Quality could not be an additional insured under Rickhoff's policy because that policy required a written contract between the insured and any additional insured, and there was no written contract between Quality and Rickhoff. Further, although Horton had issued a certificate of insurance on September 30, 1999, stating that Quality was an additional insured, Horton was Rickhoff's agent, not Meridian's; therefore, Meridian asserted that Horton could not bind Meridian. Meridian also pointed out that Charles Naso, the Horton employee who issued the certificate of insurance, testified in his deposition in the matter that the certificate was not sufficient to bind Meridian and that the certificate could not be interpreted as an alteration of Rickhoff's insurance policy. In response, Quality asserted that a genuine issue of material fact existed regarding whether it was an additional insured. The circuit court granted that motion in October 2004. Quality did not appeal from that determination.

In 2005, Quality and Rickhoff reached a settlement with Coleman in the injury litigation. Pursuant to that agreement, Quality voluntarily dismissed its counterclaim for contribution and its breach of contract to procure insurance claim against Rickhoff. The circuit court entered a good-faith finding as to the settlement.

Thereafter, State Farm, which is Quality's general liability insurer, as subrogee, commenced the present action against Rickhoff for breach of contract to procure insurance. State Farm alleged that when Meridian refused to defend Quality and, later, prevailed in the declaratory judgment action, it amounted to a breach of Rickoff's contractual obligation to procure insurance for Quality. This resulted in State Farm having to defend Quality in the Coleman litigation. In so doing, State Farm paid out a $110,000 settlement and roughly $82,000 in attorney fees and other defense costs.

Rickhoff responded to State Farm's complaint by denying all material allegations. Rickhoff also filed a third-party complaint against Meridian and Horton. Therein, Rickhoff alleged that the certificate of insurance issued by Horton on September 30, 1999, which stated that Quality was an additional insured, was never rescinded or revoked. Thus, Rickhoff contended that Meridian breached its contract of insurance when it denied coverage to Quality. Rickhoff also contended that the certificate of insurance was sufficient to satisfy the writing requirement of its liability policy. Regarding Horton, Rickhoff contended that Horton breached its contract to provide insurance for Quality as Rickhoff had requested. Rickhoff also contended that Horton negligently failed to procure insurance for Quality and failed to adequately advise it of the prerequisites for having Quality named as an additional insured.

Rickhoff attached to its complaint its Meridian general liability insurance policy and the September 30, 1999, certificate of insurance. The insurance policy provided, *inter alia*, that an "insured" under the policy included "any person or organization whom you [Rickhoff] are required to name as an additional insured on this policy under a written contract or agreement." Coverage for an additional insured was limited to the work performed for the additional insured by the insured or for the insured. Relevant amendments to the policy similarly required a "written contract" between the insured and the additional insured.

In response, Meridian filed a motion to dismiss Rickhoff's third-party complaint pursuant to both sections 2—615 and 2—619 of the Code. Pursuant to section 2—615, Meridian contended that Rickhoff failed to state a claim for breach of contract where Rickhoff failed to fulfill the writing requirement of the policy to name an additional

insured and failed to point to anything else that would give rise to a contractual duty. Pursuant to section 2—619, Meridian contended that Rickhoff's third-party complaint against it was barred by the prior declaratory judgment because the issue of whether Meridian had a duty to defend Quality had already been adjudicated in that action. Further, in the declaratory judgment action, Quality's legal position, that it was entitled to coverage, was the same as the position that Rickhoff would have taken. Meridian attached its summary judgment motion from the declaratory judgment action, along with Quality's response, Meridian's reply, and the court order granting the motion.

Horton also filed a motion to dismiss Rickhoff's third-party complaint pursuant to section 2—619 of the Code. Therein, Horton contended that Rickhoff was aware of the Meridian policy's writing requirement for naming additional insureds. Horton also argued that the September 30, 1999, certificate of insurance was specific to another job and could not be used to assert coverage for the Quality job in question. Finally, Horton argued that the two-year statute of limitations for claims against an insurance agent (735 ILCS 5/13—214.4 (West 2006)) had run. Specifically, Horton claimed that Rickhoff knew that Meridian would not cover Quality as early as the day of the accident, when Charles Naso advised John Rickhoff that it could not issue a certificate of insurance for the Quality job at that time. Horton further claimed that the latest that Rickhoff could have learned of the lack of coverage was April 27, 2004, when Naso was deposed in the declaratory judgment action. Rickhoff's counsel was present at that deposition because of the contribution and breach of contract claims that Quality had filed against Rickhoff.

In his deposition, which Horton attached to its motion to dismiss, Naso testified that his duties at Horton included responding to requests for additional insured coverage. Naso explained that Rickhoff had been a client of Horton for roughly 10 years prior to the Coleman accident. Prior to the Meridian policy, Rickhoff had a policy with another provider that did not contain a requirement that there be a written contract between it and its additional insured. However, when Rickhoff changed to the Meridian policy in 1997, Naso personally advised John Rickhoff and his wife, Judy, of this new requirement. Naso also explained that at the time in question, it was the industry standard to require a written contract before an insured could name another party as an additional insured.

On the date of Coleman's injury, March 13, 2000, John Rickhoff telephoned Naso and requested that a certificate of insurance be issued. Naso explained that he could not issue such a certificate and backdate coverage. Naso also explained that additional insured cover-

age was usually job-specific. Therefore, the September 30, 1999, certificate of insurance was not sufficient to evidence coverage for the Quality job in question because that certificate had been issued for another job. However, Naso also admitted that where there was a course of dealing, contractors would not necessarily obtain new certificates of insurance for every job that it did with another contractor. Further, an insured did not pay a premium every time it added an additional insured. Rather, there was a blanket endorsement that was paid for with the policy. Horton also did not require a copy of the written contract before it would name a party as an additional insured.

Naso also explained that Horton was paid a commission for issuing insurance policies. Although Horton acted as an agent of the insured in procuring insurance, it had the authority to bind insurance companies to contracts.

Rickhoff filed a single response to both motions to dismiss. In response to Meridian's motion to dismiss, Rickhoff argued that Horton was Meridian's agent and, therefore, Horton could bind Meridian to cover Quality for the job in question. Further, Rickhoff contended that it was an indispensable party to the earlier declaratory judgment action filed by Meridian. However, because Meridian did not join Rickhoff in that action, that action could not be binding on Rickhoff. Rickhoff also asserted that its interests were contrary to Quality's in the declaratory judgment action because if Quality were also covered under the Meridian policy, it would have had to share the policy limit with Quality. This could have resulted in Rickhoff having to pay a judgment out of pocket.

In response to Horton's motion to dismiss, Rickhoff contended that the cause of action did not accrue until State Farm commenced the present lawsuit. Rickhoff asserted that Naso's deposition did not foreclose the possibility that Quality could have been covered under the policy. Specifically, Naso admitted that he had the authority to bind Meridian to insurance contracts and that certificates of insurance were not necessarily job-specific where contractors had long-term courses of dealing with other contractors. Rickhoff attached several items to its response, including Quality's counterclaim for contribution and breach of contract to procure insurance.

Following argument, the circuit court granted both Horton's and Meridian's motions to dismiss in a single order. Regarding Meridian's motion, the court found that Rickhoff's claim was precluded by the declaratory judgment because Quality espoused the same position that Rickhoff would have taken in the declaratory judgment action. The court also found that Rickhoff was not a necessary party to that action, under existing precedent, because Rickhoff's coverage was not at

issue. Regarding Horton's motion, the court found that Rickhoff was aware of the lack of additional insured coverage for Quality at the latest at Naso's deposition on April 27, 2004. Therefore, Rickhoff's claim against Horton was time-barred. At the request of Meridian, the court further found that there was "no just reason to delay enforcement or appeal, or both," and set the cause for status as to the "remaining parties."

Rickhoff subsequently filed a single motion to reconsider the dismissal of its third-party complaint. Therein, Rickhoff reiterated its previous arguments. It also maintained that Quality and Rickhoff were not in "privity" for purposes of res judicata because Quality had also sued Rickhoff for breach of contract to procure insurance. Regarding Horton's motion, Rickhoff asserted that it should not have been required to file a prophylactic lawsuit to determine whether there was additional insured coverage for Quality until it knew the outcome of the declaratory judgment action.

Following argument, the court denied Rickhoff's motion to reconsider as to Meridian's motion to dismiss on May 1, 2008. However, as to Horton's motion to dismiss, it reserved ruling. It then issued a written order denying Rickhoff's motion to reconsider on June 20, 2008. Therein, the court specifically found that the Fourth District's decision in Broadnax v. Morrow, 326 Ill. App. 3d 1074, 1081 (2002), which held that claims against an insurance agent accrue when the claim is denied, not when a declaratory action enters an order finding no coverage, should apply to Rickhoff's claim. Rickhoff then filed a notice of appeal from the granting of both Meridian's and Horton's motions to dismiss on July 17, 2008.

Before addressing the merits of the issues raised by Rickhoff in this appeal, we must address a jurisdictional issue raised by Meridian. Meridian contends that this court lacks jurisdiction over Rickhoff's appeal of its motion to dismiss because Rickhoff failed to file a timely notice of appeal after the circuit court denied its motion to reconsider. Specifically, Meridian maintains that the Rule 304(a) (210 Ill. 2d R. 304(a)) finding entered by the circuit court in its December 14, 2007, order dismissing Rickhoff's third-party complaint served not only to sever the third-party action from the original action filed by State Farm but also to sever the third-party claims against the two third-party defendants. Therefore, Meridian maintains, when the circuit court denied Rickhoff's motion to reconsider as it related to Meridian, Rickhoff had 30 days from that date in which to file a notice of appeal as to Meridian. Because Rickhoff waited until the circuit court denied its motion to reconsider as to Horton before it filed its notice of appeal, Meridian maintains, Rickhoff's appeal is untimely. We disagree.

It is well established that jurisdiction only arises in this court when a party files a timely notice of appeal. *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 521 (2001); see also 155 Ill. 2d R. 301. A notice of appeal is timely if it is filed within 30 days of the entry of a final judgment or the order disposing of the last pending postjudgment motion. *Steinbrecher*, 197 Ill. 2d at 521; see also 210 Ill. 2d R. 303(a).

Subject to certain exceptions, an appeal can be taken in a case only after the circuit court has resolved all claims against all parties. *Pekin Insurance Co. v. Phelan*, 343 Ill. App. 3d 1216, 1219 (2003), citing *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 465 (1990). Put another way, appellate jurisdiction generally exists only to review final orders. *Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 7 (1998); *Weiss v. Waterhouse Securities, Inc.*, 335 Ill. App. 3d 875, 880 (2002). An order is said to be final if it " ' "disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof," ' " such as a claim in a civil case. *In re Estate of French*, 166 Ill. 2d 95, 101 (1995), quoting *Treece v. Shawnee Community Unit School District No. 84*, 39 Ill. 2d 136, 139 (1968), quoting *Village of Niles v. Szczesny*, 13 Ill. 2d 45, 48 (1958).

Where there are multiple parties and/or multiple claims involved in a case, Supreme Court Rule 304(a) provides that a trial court can make a particular final order appealable prior to the resolution of all claims against all parties by entering an express finding that there is no just reason for delaying enforcement or appeal. 210 Ill. 2d R. 304(a); *Baldassone v. Gorzelanczyk*, 282 Ill. App. 3d 330, 334 (1996); see also *Marsh*, 138 Ill. 2d at 464. Absent such a finding, if an order finally resolves one claim against one party, but other claims and/or other parties remain pending, an appeal from the final order must wait until the other matters have been resolved. *Marsh*, 138 Ill. 2d at 464.

■ Further, whether to enter a Rule 304(a) finding is a matter left to the trial court's discretion. *In re Estate of Stark*, 374 Ill. App. 3d 516, 523-24 (2007). In determining whether to enter a Rule 304(a) finding, the trial court may consider some or all of several factors, including: " '(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the [trial] court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which [would] result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, the frivolity of competing claims, expense, and the like.' " *Geier v. Hamer Enterprises, Inc.*, 226 Ill. App. 3d 372, 383 (1992), quoting *Allis-*

*Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360, 364 (3d Cir. 1975). However, in addition to these factors, a paramount consideration is efficient judicial administration. See *Geier*, 226 Ill. App. 3d at 383.

■ Here, there is no question that a Rule 304(a) finding was entered by the circuit court on December 14, 2007, as part of its order granting the motions of Meridian and Horton, and dismissing Rickhoff's third-party complaint. This court is also not being asked to determine whether the trial court appropriately exercised its discretion in entering the Rule 304(a) finding. Instead, we must determine the extent of the reach of the Rule 304(a) finding. Rickhoff maintains that the Rule 304(a) finding served only to sever the third-party action from the original action filed by State Farm and Quality. Meridian maintains that the Rule 304(a) finding also served to sever the claims against the two third-party defendants from one another.

In determining the effect of Rule 304(a) findings, our supreme court has made clear that its interpretations have been governed by its policy disfavoring piecemeal appeals. See *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 342 (2001); *Niccum*, 182 Ill. 2d at 9. Further, our examination of the record in the case at bar discloses that the intent of the court and the parties was to treat the third-party action as a single piece of the action, albeit separate from the primary action commenced by State Farm, as to both third-party defendants. The court resolved both third-party defendants' motions to dismiss in a single order, and Rickhoff filed a single motion to reconsider as to both third-party defendants. Moreover, the allegations regarding the third-party complaint as well as the grounds for its dismissal against both third-party defendants involved the conduct of both third-party defendants. The record thus discloses that the trial court exercised its discretion to determine whether to sever the third-party complaint from the initial complaint filed by State Farm. We cannot say that the trial court entertained the option of severing the claims against the two third-party defendants from one another. We therefore find that the Rule 304(a) finding entered by the circuit court on December 14, 2007, should be strictly construed as to apply only to sever the third-party action from the primary action filed by State Farm. It does not sever the claims against the two third-party defendants.

As a result, Rickhoff's notice of appeal, which was filed less than 30 days after the order disposing of the portions of Rickhoff's motion to reconsider that related to Horton, was timely as to both Meridian and Horton. Thus, jurisdiction exists over Rickhoff's appeal of the dismissal of its third-party complaint against Meridian.

We now turn to the issues raised by Rickhoff in this appeal. Rickhoff first contends that the circuit court erred in dismissing its third-party complaint against Meridian because it was not barred by the prior declaratory judgment.

A motion to dismiss based on section 2—619 of the Code admits the legal sufficiency of the complaint, but asserts that the claim is defeated based on certain defects, defenses, or other affirmative matter. *Mount Mansfield Insurance Group, Inc. v. American International Insurance Group, Inc.*, 372 Ill. App. 3d 388, 392 (2007). In particular, section 2—619(a)(4) permits the circuit court to dismiss a cause of action if it is barred by a prior judgment. 735 ILCS 5/2—619(a)(4) (West 2006). We review the dismissal of a complaint on such grounds *de novo. Mount Mansfield Insurance Group*, 372 Ill. App. 3d at 392.

Rickhoff raises two alternative arguments with respect to Meridian. First, we will address Rickhoff's contention that the prior judgment declaring that Meridian had no duty to defend Quality does not bar its third-party complaint against Meridian in the instant action. In that regard, Rickhoff maintains that it was not in privity with Quality because they did not share the same legal interest and that Quality did not adequately represent Rickhoff's interests in the declaratory judgment action.

■ A prior judgment may have preclusive effects on a subsequent action under either the doctrine of *res judicata* or the doctrine of collateral estoppel. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001). The doctrine of *res judicata* provides that a final judgment on the merits by a court of competent jurisdiction bars any subsequent action between the same parties or their privies on the same cause of action. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). In order for *res judicata* to procedurally bar an action, three requirements must be satisfied: (1) a final judgment has been rendered by a court of competent jurisdiction; (2) an identity of the causes of action exists; and (3) the parties or their privies are identical in both actions. *Hudson*, 228 Ill. 2d at 467.

■ Similarly, under collateral estoppel, the adjudication of a fact or issue in one cause bars relitigation of the same fact or issue in a subsequent suit. *LaSalle Bank National Ass'n v. Village of Bull Valley*, 355 Ill. App. 3d 629, 635 (2005). The party asserting collateral estoppel must show: (1) the issue previously adjudicated is identical to the question presented in the subsequent action; (2) a final judgment on the merits exists in the prior case; and (3) the party against whom estoppel is directed was a party to the prior litigation or is in privity with such a party. *Yorulmazoglu v. Lake Forest Hospital*, 359 Ill. App. 3d 554, 558 (2005).

Here, regardless of which of the two doctrines applies, only privity is in dispute, and privity is the same under either doctrine. *Yorulmazoglu*, 359 Ill. App. 3d at 558-59. Privity generally exists when parties adequately represent the same legal interest. *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992); *Mount Mansfield Insurance Group, Inc.*, 372 Ill. App. 3d at 393. In determining whether privity exists, the identity of the interest controls, not the nominal identity of the parties. *Progressive Land Developers*, 151 Ill. 2d at 296.

■ Illinois courts have relied on the Restatement of Judgments to further define privity, which provides:

" 'Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties.' " *Progressive Land Developers*, 151 Ill. 2d at 296, quoting Restatement of Judgments §83, Comment *a*, at 389 (1942).

Illinois courts have also utilized the Restatement (Second) of Judgments to further define privity, recognizing that the Restatement (Second) has changed the landscape of this point of law significantly. See *Progressive Land Developers*, 151 Ill. 2d at 296; *Yorulmazoglu*, 359 Ill. App. 3d at 559. The Restatement (Second) of Judgments offers the most useful rationale for determining whether privity exists here.

The Restatement (Second) of Judgments explains that " 'privity' refers to a cluster of relationships, [citation], under which the preclusive effects of a judgment extend beyond a party to the original action and apply to persons having specified relationships to that party." Restatement (Second) of Judgments, Introduction, at 1 (1982). The Restatement (Second) further explains that there are three general categories of relationships that may establish privity. Restatement (Second) of Judgments §75, Comment *a*, at 210 (1982); see also *Diversified Financial Systems, Inc. v. Boyd*, 286 Ill. App. 3d 911, 916 (1997) (also discussing the Restatement (Second) of Judgments). The first category includes relationships that are "explicitly representative," which includes: (1) the trustee of an estate or interest of which the nonparty is a beneficiary; (2) a person invested by the nonparty with the authority to represent the nonparty in the action; (3) the executor, administrator, guardian, conservator, or similar fiduciary manager of an interest in which the nonparty is a beneficiary; (4) an official or agency invested by law with the authority to represent the nonparty; or (5) the representative of a class of persons similarly situated, designated as the class representative by the court, of which the

nonparty is a member. Restatement (Second) of Judgments §§41, 75(1) & Comment *a* (1982). The second category of relationships includes "an array of substantive legal relationships," referred to in sections 45 through 61 of the Restatement (Second) of Judgments, in which one of the parties to the relationship is "treated as having the capacity to bind the other to a judgment in an action to which the latter is not a party." Restatement (Second) of Judgments §75(2), Comment *a*, at 210 (1982). These relationships include, *inter alia,* co-obligors, parties who are vicariously liable for one another, bailees and bailors, co-owners of property, assignees and assignors, the promisee and intended beneficiary of a contract, corporations and their officers, directors, and shareholders, and members of partnerships. See Restatement (Second) of Judgments §§45 through 61 (1982). The third category of relationships includes successors in interest to property. Restatement (Second) of Judgments §75(3) & Comment *a* (1982).

The relationship between Rickhoff and Quality does not fall into either the first or third category of relationships. However, it does fall into the second, and more specifically, the relationship described by section 56 of the Restatement, that of promisee and intended beneficiary to a contract. Section 56 states:

> "When a contract between two persons creates an obligation in favor of another person as an intended beneficiary:
> \*\*\*
>
> (2) A judgment against the third party beneficiary in an action on the obligation to him terminates the promisor's obligation to the promisee." Restatement (Second) of Judgments §56(2), at 73 (1982).

Here, where Rickhoff allegedly purchased additional insured coverage for Quality from Meridian, Rickhoff is the promisee, Meridian is the promisor, and Quality is an intended third-party beneficiary of the insurance contract. See Restatement (Second) of Contracts §2 (1981) (defining promise, promisor, promisee, and beneficiary). The declaratory judgment action between Meridian and Quality which determined that Meridian, as promisor, did not have a duty to insure and defend Quality, as third-party beneficiary, was a judgment that terminated Meridian's obligation to Rickhoff, as promisee. Thus, under the second premise of section 56, the determination that Meridian did not have a duty to insure Quality also terminated Meridian's obligation to Rickhoff to provide additional insured coverage to Quality for the job in question. Restatement (Second) of Judgments §56(2) & Illustration 4 (1982). As comment *a* to section 56 further explains, the promisee is precluded by the judgment between the promisor and the intended third-party beneficiary "not because the promisee is bound by the

judgment, but because the promisee's action is based upon the promisor's wrongful failure to perform an obligation to the beneficiary." Restatement (Second) of Judgments §56, Comment *a*, at 74 (1982). Further, "[s]ince the judgment against the beneficiary has conclusively excluded that contingency, there is a failure of occurrence of an event necessary to the validity of the promisee's cause of action." Restatement (Second) of Judgments §56, Comment *a*, at 74 (1982).

Further, in response to Rickhoff's argument that it was facing liability from Quality pending the outcome of the declaratory judgment action, the Restatement (Second) of Judgments does not consider it material that there were additional obligations running between the beneficiary and the promisee, which may have been impacted by the adjudication between the beneficiary and the promisor. As the Reporter's Note to section 56 explains, the Restatement (Second) of Judgments eliminated the distinction between donee-beneficiaries and creditor-beneficiaries for the purposes of determining the preclusive effect of a judgment. See Restatement (Second) of Judgments §56, Reporter's Note, at 75 (1982). Thus, whether Rickhoff had other obligations to Quality that would be affected by the discharge of Meridian's obligation to Quality is immaterial to whether the declaratory judgment relieving Meridian of its obligation to Quality has a preclusive effect on Rickhoff's cause of action here. Accordingly, Rickhoff's claim against Meridian is precluded by the declaratory judgment in favor of Meridian against Quality.

■ Rickhoff appears to also suggest in its brief that its cause of action should not be precluded by the prior declaratory judgment against Quality because Quality did not adequately represent Rickhoff's interest in that action. The Restatement (Second) explains that the privity rule is based upon the premise that the representative will adequately protect the nonparty's interests. Restatement (Second) of Judgments §75, Comment *b*, at 210 (1982). To that end, if there was inadequate representation or collusion between the parties to a prior action, then the party represented in that action will not be bound by it. Restatement (Second) of Judgments §75, Comments *c*, *d*, at 211 (1982); see also *Progressive Land Developers*, 151 Ill. 2d at 297 (where representation of the party to the prior litigation was not in question, examining whether a representative party in a prior action provided inadequate representation for purposes of privity). Comment *d* to section 75 of the Restatement (Second) of Judgments explains that "[w]hen the representative's mismanagement of the [prior] action cannot be said to amount to collusion, the question of giving relief [from the prior judgment] is more complicated" and the represented party must show

that the party opposing the representative party was aware that the representative party was mismanaging the action. Restatement (Second) of Judgments §75, Comment *d*, at 211-12 (1982). The represented party is not simply free to "second guess" the representative's conduct of the litigation. Restatement (Second) of Judgments §75, Comment *d*, at 211-12 (1982). In other words, under section 75, Rickhoff, the represented party, is required to show that Quality, the representative party, mismanaged the conduct of the declaratory judgment litigation and that the opposing party, Meridian, knew that Quality was mismanaging the litigation. See Restatement (Second) of Judgments §75, Illustration 1, at 212 (1982).

Our supreme court in *Progressive Land Developers* performed this analysis by asking whether the representative "vigorously" advocated the position in the prior litigation. *Progressive Land Developers*, 151 Ill. 2d at 297. The court further explained that the mere fact that the court rejected the representative party's arguments was not dispositive. *Progressive Land Developers*, 151 Ill. 2d at 297.

Here, Rickhoff asserts that Quality did not have an incentive to vigorously defend the declaratory judgment action because if it lost, it could simply turn around and sue Rickhoff for breach of contract to procure insurance. We do not believe that the prospect of having to prosecute an additional lawsuit to obtain relief would constitute an incentive. More importantly, the documents contained in our record from the declaratory judgment action, which include Quality's opposition to Meridian's motion for summary judgment, reveal that Quality briefed and argued its position in favor of coverage at length with competent counsel. Therefore, we find that Quality did adequately represent Rickhoff's interest in advocating for additional insured coverage in the prior declaratory judgment action. See, *e.g.*, *Progressive Land Developers*, 151 Ill. 2d at 297. Thus, Rickhoff's claim against Meridian for failing to provide additional insured coverage to Quality is precluded by the prior declaratory judgment denying Quality coverage.

Second, as a defense to Meridian's preclusion argument, Rickhoff asserts that the declaratory judgment finding that Meridian had no duty to defend Quality was violative of due process and void because Meridian failed to join Rickhoff in that action. Specifically, Rickhoff maintains that it was a necessary party to the declaratory judgment action because it could be subject to liability from Quality pending the outcome of the suit. Therefore, Rickhoff maintains that it cannot be bound by the declaratory judgment.

Initially, we must express serious doubt over whether Rickhoff can, at this procedural juncture, raise an argument that a judgment

rendered between two other parties roughly five years ago is void. We also question whether Rickhoff even has standing to do so. All of the cases that the parties have cited, and this court has found, on this point of law have involved objections to joinder that were raised prior to the entry of judgment or on direct appeal from such a judgment. Thus, there appears to be no support for Rickhoff's attempt to raise the issue of joinder at this juncture. Moreover, the record discloses that Rickhoff was aware of the declaratory judgment proceedings while they were underway and it could have sought to intervene, but elected not to do so.

However, even assuming that Rickhoff may properly raise an objection to joinder here, its presence was not necessary in the declaratory judgment action. A party is necessary where its presence in a lawsuit is required in order to: (1) protect an interest which the absentee has in the subject matter which would be materially affected by a judgment entered in his absence; (2) reach a decision which will protect the interests of those who are before the court; or (3) enable the court to make a complete determination of the controversy. *Society of Mount Carmel v. National Ben Franklin Insurance Co. of Illinois*, 268 Ill. App. 3d 655, 661 (1994). In the prior declaratory judgment action between Meridian and Quality, the court was obviously able to reach a final judgment without the presence of Rickhoff, and Meridian and Quality never suggested that their interests were somehow compromised by Rickhoff's absence. It is only Rickhoff that now complains that its rights were adversely affected by its absence. According to the rationale behind Illinois joinder principles, the only reason that a court would reverse or void a judgment based on prejudice to an absent party is because that party was bound by the judgment without an opportunity to be heard. *Tsuetaki v. Novicky*, 158 Ill. App. 3d 505, 513 (1983); *Rubin v. Boorstein*, 73 Ill. App. 3d 689, 692-93 (1979); see also 4 R. Michael, Illinois Practice §29.2, at 26 (1989).

However, as we explained above, Rickhoff's current claim against Meridian based on Meridian's failure to cover Quality is precluded because that issue was decided in the declaratory judgment action and because Quality was in privity with Rickhoff. This would seem to suggest that Rickhoff was, in fact, a necessary party to that action. However, Illinois law excuses the presence of a necessary party where that party is represented by others in the suit that give the absent party's interest "actual and efficient protection." *Holzer v. Motorola Lighting, Inc.*, 295 Ill. App. 3d 963, 972 (1998). The so-called "doctrine of representation" requires that those who are brought into the suit "have the same interest as have those not brought in, and are equally certain to bring forward the entire merits of the controversy as would

the absent persons." *Oglesby v. Springfield Marine Bank*, 385 Ill. 414, 423-24 (1944). The doctrine of representation is frequently applied to hold that the executor is representative of the beneficiaries to a will and has also been held to find a mortgagor representative of a mortgagee. *Moore v. McDaniel*, 48 Ill. App. 3d 152, 158 (1977).

Here, we have already found that Rickhoff's interest in the declaratory judgment action was adequately represented by Quality. As explained above, because Quality would have received the primary benefit in receiving coverage as an additional insured, any cause of action Rickhoff would have against Meridian as far as that coverage was contingent upon Meridian's obligation to cover Quality. Once it had been determined that Meridian did not have that obligation under the insurance contract, Rickhoff could have no cause of action against Meridian for failure to cover Quality. See Restatement (Second) of Judgments §56, Comment *a*, at 73-74 (1982). Further, because Quality vigorously defended that expectation of coverage, Quality adequately represented Rickhoff's interest in the declaratory judgment action. As such, Rickhoff's presence in the declaratory judgment suit was not necessary to defend that interest. For these reasons, we hold that Rickhoff's claim against Meridian for breach of the additional insured coverage was precluded by Meridian's declaratory judgment against Quality. We further hold that Rickhoff's presence in that declaratory judgment action was not necessary under the doctrine of representation. Therefore, we affirm the judgment of the circuit court granting Meridian's motion to dismiss Rickhoff's third-party complaint.

We now turn to Rickhoff's claim of error with respect to Horton's motion to dismiss. Rickhoff claims that the circuit court erred in dismissing its third-party complaint against Horton because its claims against Horton were not barred by the statute of limitations for insurance producers (735 ILCS 5/13—214.4 (West 2004)). Rickhoff maintains that it suffered no injury as a result of Horton's conduct and that, therefore, the cause of action did not accrue until the declaratory judgment was entered that Meridian had no duty to defend Quality.

Section 2—619(a)(5) of the Code authorizes a court to dismiss a complaint if it was "not commenced within the time limited by law." 735 ILCS 5/2—619(a)(5) (West 2006). We review section 2—619(a)(5) dismissals *de novo*. *Alvarez v. Pappas*, 229 Ill. 2d 217, 220 (2008).

Section 13—214.4 of the Code provides that "[a]ll causes of action brought by any person or entity under any statute or any legal or equitable theory against an insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, cancellation of, or failure to procure any policy

of insurance shall be brought within 2 years of the date the cause of action accrues." 735 ILCS 5/13—214.4 (West 2006). This section encompasses claims by an insured against his insurance agent. *Broadnax v. Morrow*, 326 Ill. App. 3d 1074, 1078 (2002); *Indiana Insurance Co. v. Machon & Machon, Inc.*, 324 Ill. App. 3d 300, 301 (2001).

We must now determine when Rickhoff's cause of action against Horton accrued. Rickhoff's claims against Horton were for breach of contract to procure insurance and negligence in procurement of insurance.

In *Indiana Insurance*, this court found that these types of claims accrued at the time of the breach, not at the time of the injury. *Indiana Insurance*, 324 Ill. App. 3d at 304. In so holding, the court observed that for contract actions, a cause of action accrues at the time of the breach of the contract, not at the time when damages are sustained. *Indiana Insurance*, 324 Ill. App. 3d at 303. In contrast, for tort actions, the cause of action generally accrues at the time of the injury. *Indiana Insurance*, 324 Ill. App. 3d at 303. However, where a tort cause of action arises out of a contractual relationship, then the cause of action accrues at the time of the breach of duty, not when the damages are sustained. *Indiana Insurance*, 324 Ill. App. 3d at 303-04, citing *West American Insurance Co. v. Sal E. Lobianco & Son Co.*, 69 Ill. 2d 126, 132 (1977), and *Del Bianco v. American Motorists Insurance Co.*, 73 Ill. App. 3d 743, 748 (1979). The *Del Bianco* court explained that the rationale behind this rule is to require parties to act quickly after a breach, rather than allowing them to wait until damages increase, and to recognize that the plaintiff has chosen to deal with the defendant and, as a result, their relationship could have been defined in a way as to minimize loss. *Del Bianco*, 73 Ill. App. 3d at 748. The *Indiana Insurance* court also noted "[t]hat damages are not immediately ascertainable does not postpone the accrual of a claim." *Indiana Insurance*, 324 Ill. App. 3d at 304, citing *Del Bianco*, 73 Ill. App. 3d at 748.

In *Broadnax*, the Fourth District similarly found that these types of claims, and, specifically, a claim against an insurance agent, accrued at the time of the denial of coverage, rather than after damages were sustained as a result of the denial of coverage. *Broadnax*, 326 Ill. App. 3d at 1081. In so holding, the court found that the relationship between insured and insurance agent was a fiduciary relationship and that the discovery rule applied; however, it declined to apply the discovery rule in the same way that it is applied in legal malpractice cases. *Broadnax*, 326 Ill. App. 3d at 1080-81. The court found that the plaintiff knew or should have known of his injury when his insurance claim was first denied and that the plaintiff did not have to wait until

the outcome of declaratory judgment proceedings to determine whether coverage existed to file a suit. *Broadnax*, 326 Ill. App. 3d at 1081. The court explained that this was because the Code permits plaintiffs to plead alternative theories of recovery. *Broadnax*, 326 Ill. App. 3d at 1081, citing 735 ILCS 5/2—613 (West 1998). Thus, the court found that the plaintiff did not have to wait until the declaratory judgment action made certain that the plaintiff was not covered; the plaintiff could have also sued the defendant insurance agents as an alternative theory. *Broadnax*, 326 Ill. App. 3d at 1081-82. A dissenting opinion in *Broadnax* criticized the majority for requiring plaintiffs to file "prophylactic" lawsuits based upon the assumption that the court would rule against them. *Broadnax*, 326 Ill. App. 3d at 1083 (Cook, J., dissenting).

The majority opinion in *Broadnax* has been followed by at least two other decisions to find that a cause of action against two insurance agents accrued when coverage was denied. *General Casualty Co. of Illinois v. Carroll Tiling Service, Inc.*, 342 Ill. App. 3d 883, 899-900 (2003); *Commonwealth Insurance Co. v. Stone Container Corp.*, 323 F.3d 507, 510-11 (7th Cir. 2003) (applying Illinois law). Indeed, in *Commonwealth Insurance*, the United States Court of Appeals for the Seventh Circuit compared *Broadnax* and *Indiana Insurance* to the law of other United States jurisdictions and found nothing "outside the norm." *Commonwealth Insurance*, 323 F.3d at 511 (and cases cited therein). We believe that *Indiana Insurance* offers a more sound rationale than *Broadnax*; nevertheless, both decisions point to the same instant for the accrual of a claim against an insurance producer: the moment when coverage is denied. *Broadnax*, 326 Ill. App. 3d at 1081; *Indiana Insurance*, 324 Ill. App. 3d at 304. Thus, we adhere to that measure.

■ However, as *Indiana Insurance* also explains, the "discovery rule" may nevertheless delay the commencement of the statute of limitations period until the plaintiff learns of the denial of coverage, if the plaintiff was not immediately aware of it. *Indiana Insurance*, 324 Ill. App. 3d at 304. Therefore, we must ask when coverage was denied and when plaintiff learned of the denial.

In the present case, the record discloses that Meridian denied Quality coverage in 2002. Indulging every possible inference in Rickhoff's favor, the latest date on which Rickhoff could have learned of that denial of coverage was February 27, 2004, when Quality filed its counterclaim against Rickhoff for breach of contract to procure insurance and for contribution. Therefore, because Rickhoff filed its claims against Horton on June 26, 2006, Rickhoff's claims are barred by the

statute of limitations. Accordingly, we affirm the dismissal of Rickhoff's third-party causes of action against Horton.

Affirmed.

QUINN and COLEMAN, JJ., concur.