2019 IL App (1st) 172918
No. 1-17-2918
Opinion filed June 13, 2019

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DIRECT AUTO INSURANCE COMPANY, | ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 14 CH 14413 |
| ERICA BAHENA, JESSICA BAHENA, and NOEL HERNANDEZ, | ) ) | The Honorable |
| | ) | Kathleen M. Pantle, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Direct Auto Insurance Company (Direct Auto),[1] raises two issues in its brief

to this court: (1) whether the trial court erred in entering a default judgment against it and

(2) whether, prior to entry of the default judgment, the trial court erred in denying its motion

---

[1]Since Noel Hernandez is the plaintiff in the underlying action in which he sued to recover for his injuries in an auto accident, we refer to Direct Auto as Direct Auto rather than as plaintiff in order to avoid confusion.

to dismiss defendant Noel Hernandez's countercomplaint. For the following reasons, we find no error and affirm.

¶ 2                                                 BACKGROUND

¶ 3          This appeal concerns two actions: a prior action (12-CH-4515) filed by Direct Auto on December 26, 2012, and this current action (14-CH-14413), filed by Direct Auto on September 5, 2014, in which Direct Auto seeks to give preclusive effect to the judgment in the prior case.

¶ 4          Both actions arise out of a single auto accident and concern the coverage of a single insurance policy. Direct Auto issued a policy to Erica Bahena that insured a 2008 Chevy Malibu owned by her and that specifically listed Jessica Bahena as an additional driver. On April 1, 2012, Jessica Bahena was driving the Chevy Malibu in Chicago when it collided with a vehicle driven by Ahmed Kishta, in which Noel and Ariel Hernandez[2] were passengers.

¶ 5          On December 26, 2012, Direct Auto filed the first action which asked the circuit court of Cook County to declare that there was no coverage under its policy because of Erica Bahena's alleged failure to disclose all the residents in her household over the age of 15. This prior action (12-CH-4515) by Direct Auto named as defendants Jessica and Erica Bahena; Sana Kishta, as next friend of Ahmed Kishta, deceased; Ariel Hernandez; and Ean Services, LLC, d/b/a Enterprise Rent A Car, but it did not name Noel Hernandez. Ahmed Kishta was driving a 2011 Nissan Altima owned by Enterprise in which Ariel and Noel Hernandez were

_____

[2] Since there were two passengers with a last name of Hernandez, we refer to defendant as Noel Hernandez. There is no allegation in the record regarding the relationship, if any, between Ariel and Noel Hernandez.

passengers. Jessica Bahena was driving the vehicle that is the subject of the Direct Auto policy and that is owned by Erica Bahena.

¶ 6        On January 24, 2014, Erica Bahena filed for Chapter 7 bankruptcy.

¶ 7        As a result of the accident, Noel Hernandez filed suit in Cook County against both Jessica and Erica Bahena on March 21, 2014. On July 9, 2014, Noel Hernandez filed a motion, in the bankruptcy action, to lift the automatic stay that had been entered by the federal bankruptcy court. He moved the court to lift the stay on the sole ground that he sought "to prosecute his lawsuit against the Debtor only to the extent of the Debtor's insurance coverage" and that he would not "seek any monetary recovery from the Debtor or Debtor's estate." He represented to the bankruptcy court "that any amount of said claim shall not exceed the amount of available insurance."[3]

¶ 8        On August 20, 2014, five months after Noel Hernandez filed suit for his injuries, the circuit court granted summary judgment in the first action (No. 12-CH-4515). The order states that "the matter" came "to be heard" on both Direct Auto's motion, as well as "Bahena's motion to withdraw." The order does not specify whether the motion to withdraw was by Jessica or Erica Bahena or both. The order stated that the trial court granted judgment in favor of Direct Auto and "against Defendants," finding that "there is no duty to defend or indemnify imposed upon Direct Auto Insurance and that no Defendant is entitled to any money from Direct Auto." This short, one-paragraph handwritten order does not provide the basis or reasons for its finding.

¶ 9        On September 5, 2014, just two weeks after the grant of summary judgment in the first action, Direct Auto filed the current complaint for declaratory judgment. This time,

_____

[3] The record before us does not indicate whether the federal bankruptcy court granted his motion.

Direct Auto named Noel Hernandez as a defendant, as well as Erica and Jessica Bahena. In the current complaint (14-CH-14413), Direct Auto seeks a declaratory judgment that, because of summary judgment in the prior suit, Noel Hernandez is not entitled to receive money under the policy and that neither Jessica nor Erica Bahena is entitled to indemnification or defense with respect to his suit. The current complaint alleges that, on December 26, 2012, when the prior declaratory action (No. 12-CH-4515) was filed, Noel Hernandez had not yet made a claim or filed suit, and that was the reason that Direct Auto failed to name him as a defendant. However, Direct Auto does not allege that it was unaware that he was a passenger and does not allege that it sought to amend its complaint once he did file suit on March 21, 2014.

¶ 10        On November 3, 2014, the trial court entered an order in the current action defaulting Erica and Jessica Bahena for failing to appear and answer, and on May 5, 2015, Noel Hernandez filed an answer.

¶ 11        On May 19, 2015, Direct Auto moved for summary judgment, reiterating the same facts and claims set forth in its complaint. Direct Auto argued:

> "A court of competent jurisdiction has already found that Erica [Bahena] made a material misrepresentation that entitled [Direct Auto] to rescind the policy. This is the law of the case. The rule of the 'law of the case' provides that where an issue has been litigated and decided, a court's unreversed decision on a question of law or facts settles the question for all subsequent stages of the suit."

¶ 12        On June 30, 2015, Noel Hernandez filed a motion for relief pursuant to Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013), seeking leave to pursue discovery

"regarding the process or criteria used to determine an applicant's eligibility for a Direct Auto Insurance policy: the soliciting, screening and processing of Defendant Erica Bahena's application; what, if any, information [Direct Auto] has indicating there were undisclosed residents in [her] household at the time of the application process; when the information was obtained by [Direct Auto]; the agents and/or employees of [Direct Auto] who obtained the information; the agents and/or employees of [Direct Auto] who determined the omission was material; the agents and/or employees of [Direct Auto] who determined the policy was invalid due to the material misrepresentation; [and] the rules, policies and guidelines of Direct Auto Insurance Company on which the rescission of Defendant Erica Bahena's insurance policy was based."

¶ 13    In support of his motion, Noel Hernandez observed that Direct Auto had not attached affidavits, sworn testimony, or other evidence concerning the alleged material misrepresentation made by Erica Bahena or regarding the decision by Direct Auto to rescind the policy as a result of the alleged misrepresentation.

¶ 14    In its response to Noel Hernandez's Rule 191(b) motion, Direct Auto acknowledged that its motion for summary judgment is "based solely upon th[e] prior judgment." Direct Auto conceded that, "[i]f this Court believes that [Direct Auto] is required to prove the matters that [Noel Hernandez] now seeks to develop in discovery, then [Direct Auto's] motion [for summary judgment] will and must be *denied* because [Direct Auto] offered no such argument or proof." (Emphasis added.)

¶ 15    In his response to Direct Auto's summary judgment motion, Noel Hernandez argued that "the 'law of the case' doctrine only applies to a single case, not two different cases." Hernandez argued that, since this is a different case, the doctrine does not apply.

¶ 16    In reply, Direct Auto argued that Noel Hernandez was bound by the prior judgment because his interests were so closely aligned with the defendants in the prior case that they were his virtual representatives. Direct Auto argued that its summary judgment in the prior case was opposed by Erica Bahena and "one of the other claimants," but Direct Auto did not name which claimant.

¶ 17    On November 12, 2015, the trial court entered a one-line order denying Direct Auto's motion for summary judgment. There is no report of proceedings or bystander's report in the appellate record for this day.

¶ 18    On January 8, 2016, Direct Auto filed a "renewed" motion for summary judgment. In this motion, Direct Auto "concede[d] that [the] law of the case doctrine is not quite the right fit for this second filed action" but argued that *res judicata* required summary judgment in its favor. Direct Auto explained that, by the time Noel Hernandez filed suit, the first action was "nearing resolution" and, thus, "to quiet the coverage matter with respect to him," it filed "the instant Declaratory action" instead.

¶ 19    On March 21, 2016, the trial court denied Direct Auto's renewed motion for summary judgment in a one-line order and ordered Direct Auto "to answer outstanding discovery by April 1." There is also no report of proceedings or bystander's report in the appellate record for this day. In its subsequent response to Noel Hernandez's discovery requests, Direct Auto objected to all 16 document requests and to 11 out of 15 interrogatories.

¶ 20    On April 8, 2016, Direct Auto filed a motion for a Rule 308 finding to certify the issue for immediate appeal to the appellate court. In response, Noel Hernandez moved the court to order the contested discovery before requiring briefing on Direct Auto's Rule 308 motion. In response to Noel Hernandez's motion to compel discovery, Direct Auto argued that "[a]nything that occurred after the application" by Erica Bahena for the insurance policy "is not relevant to any issues." On June 8, 2016, the trial court denied Noel Hernandez's motion to compel without prejudice and ordered him to respond to Direct Auto's motion for a Rule 308 finding. On August 3, 2016, the trial court denied Direct Auto's motion for a Rule 308 finding. The order does not provide the trial court's findings or reasons, and the record does not contain a bystander's report or report of proceedings for this day.

¶ 21    On September 6, 2018, Noel Hernandez moved to compel discovery. On December 13, 2016, the trial court granted his motion and ordered Direct Auto to answer and produce discovery by January 17, 2017. On May 8, 2017, Noel Hernandez filed a notice to depose Rosa Miranda, a Direct Auto employee.

¶ 22    On May 17, 2017 Direct Auto filed a motion for leave to voluntarily "non-suit this matter without prejudice." However, on June 1, 2017, the trial court entered an order observing that this motion was withdrawn. On June 7, 2017, Noel Hernandez moved for leave to file a counterclaim for declaratory judgment, arguing that, "at this late date," it would be unjust to allow Direct Auto to voluntarily dismiss the action. On June 12, 2017, the trial court entered an order granting Direct Auto's motion to non-suit and granting Noel Hernandez's motion for leave to file a counterclaim. On June 27, 2017, Noel Hernandez filed his countercomplaint for declaratory judgment.

¶ 23    On July 7, 2017, Noel Hernandez noticed the depositions of Mike Torrello and Rosa Mirandez, employees of Direct Auto. On July 24, 2017, Direct Auto moved to dismiss Noel Hernandez's countercomplaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2016)). On July 31, 2017, Noel Hernandez moved to compel the depositions of Mike Torrello and Rosa Mirandez. In its reply in support of its motion to dismiss, Direct Auto observed that Erica and Jessica Bahena were being defended by Direct Auto's retained counsel and, thus, there was "no dispute regarding [Direct Auto's] duty to defend." Direct Auto argued that, "because there is no judgment entered against [Erica or Jessica Bahena], this Court is not permitted to issue an advisory opinion as to whether [Direct Auto] would be required to indemnify if a judgment is entered sometime in the future." On September 28, 2017, the trial court entered an order denying Direct Auto's motion to dismiss and granting Noel Hernandez's motion to compel discovery.

¶ 24    On November 7, 2017, the trial court entered an order defaulting Direct Auto. Since this order is one of the orders at issues on this appeal, we provide the order in full:

> "This matter coming before the Court on the continued motion of the Defendant/Counter Plaintiff Noel Hernandez, to compel Direct Auto to answer written discovery and produce witnesses Mike Torello and Rosa Mira[ndez] for deposition; the Court being advised and the parties, being represented by counsel[:]
>
> IT IS ORDERED that the motion to compel is withdrawn. Direct Auto Ins. Company is defaulted for the reasons stated on the record. Judgment is entered in favor of Noel Hernandez and against Direct Auto. The Court finds that Direct Auto Ins. Co. owes a duty to defend Erica Bahena in Case 14 L 3287."

¶ 25    The November 7, 2017, order states that it was issued "for the reasons stated on the record," and the transcript of the November 7, 2017, proceeding is the only transcript in the report of proceedings filed with this court.

¶ 26    Since the one-page transcript is very short and is at the heart of the issue on appeal, we provide it below in full:

"MR. ENRIGHT: Thomas Enright for the defendant. It's the defendant counter plaintiff Noel Hernandez.

MR. NEWMAN: Jim Newman for the defendant Direct Auto.

THE COURT: Where are we at this point?

MR. ENRIGHT: Well, it's here today, your Honor—it's on our motion which [ha]s been entered and continued to compel. It's on behalf of Noel Hernandez and he is against Direct Auto.

We are—for the written discovery as well as the deposition of two of their employees, Mike Torello, and Ms. Miranda.

THE COURT: So, where are we at, Mr. Newman?

MR. NEWMAN: Judge, as I informed you when we were last in Court, I think about six weeks ago, you had denied our Motion to Dismiss and we are declining to participate further in the case.

We are not answering the complaint. We're not at issue. I've advised the Court that the Court's free to enter a default judgment against my client and enter the relief requested in the complaint.

And then we will—if my client wants to appeal, we will appeal, but the case doesn't have value for my client to participate in the case any further. So that's the position that we are taking.

MR. ENRIGHT: It's a default?

THE COURT: Enter a judgment of default against Direct Auto today and the declaration that you seek. So go ahead and draft the order then.

MR. NEWMAN: Thank you, your Honor."

¶ 27    Seven days later, on November 14, 2017, Direct Auto filed a notice of appeal "from the November 7, 2017 order granting judgment against Defendant, Direct Auto Insurance Company, and the September 28, 2017 order denying Defendant Direct Auto Insurance Company's Motion to Dismiss Noel Hernandez's Counter Complaint."

¶ 28    On November 27, 2017, Noel Hernandez moved to modify the trial court's November 7, 2017, order "to rule that the Direct Auto policy number 74170-0-0 issued to Erica Bahena was in effect at the time of the April *** 2012 accident, that Direct Auto policy number 741 70-0-0 covers the April *** 2012 accident *** and that Direct Auto owes a duty to defend both Erica Bahena and Jessica Bahena in Case No. 14 L 3287."

¶ 29    On January 12, 2018, the record on appeal (both the common law record and the report of proceedings) were filed in this court. Other than the request for preparation of the record, the last item appearing in the common law record is Hernandez's November 27, 2017, motion seeking to modify the November 7, 2017, order.

¶ 30    On February 28, 2018, Direct Auto filed an amended notice of appeal stating that it was also appealing "the January 31, 2018 order granting Noel Hernandez's post-judgment motion to modify." However, the January 31, 2018, order is not attached to the amended

notice of appeal and is not in either plaintiff or defendant's appendices. Neither party moved to supplement the record to add it, and it is not in the record on appeal, which was filed with this court before the order was entered. As a result, this order is, quite literally, not before us. We have neither the order itself nor the report of proceedings for that day.

¶ 31                                                    ANALYSIS

¶ 32          Direct Auto raises two issues in its brief to this court (1) whether the trial court erred in entering a default judgment against it and (2) whether, prior to entry of the default judgment, the trial court erred in denying its motion to dismiss Noel Hernandez's countercomplaint. For the following reasons, we find no error and affirm.

¶ 33                                              I. Default Judgment

¶ 34          Direct Auto argues that the trial court erred in entering a default judgment against it. After the trial court had twice[4] ordered Direct Auto to schedule the depositions of two of its employees and to provide requested documents, Direct Auto asked the trial court, instead, to enter a default judgment against it, which the trial court did.

¶ 35          Illinois Supreme Court Rule 219(c)(v) (eff. July 1, 2002) permits a trial court to enter a default judgment against a party for a party's failure to comply with the court's orders compelling discovery. A trial court's decision concerning a discovery sanction is reviewed only for an abuse of discretion. "The decision to impose a particular sanction under Rule 219(c) is within the discretion of the trial court and, thus, only a clear abuse of discretion justifies reversal." *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 120 (1998). An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable

---

[4] The trial court twice granted Noel Hernandez's motions to compel discovery: on December 13, 2016, and on September 28, 2017.

or where no reasonable person would take the view adopted by the trial court. *Thomas v. Weatherguard Construction Co.*, 2018 IL App (1st) 171238, ¶ 53. "The issue, then, is not what decision we would have reached if we were reviewing the facts on a clean slate, but whether the trial court acted in a way that no reasonable person would." *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 657 (2009).

¶ 36      In the case at bar, the trial court entered a default judgment at Direct Auto's request. A party cannot invite an error by the trial court and then use it as a basis for appeal. "Under the invited-error doctrine, a party cannot acquiesce to the manner in which the trial court proceeds and later claim on appeal that the trial court's actions constituted error." *People v. Manning*, 2017 IL App (2d) 140930, ¶ 16; see also *People v. Cox*, 2017 IL App (1st) 151536, ¶ 73; *People v. Hughes*, 2015 IL 117242 ¶ 33 ("the invited error rule" states that "a party cannot complain of error that it brought about or participated in"); *People v. Bush*, 214 Ill. 2d 318, 332 (2005) (when a party "procures, invites, or acquiesces" to a trial court's evidentiary ruling, even if the ruling is improper, he cannot contest the ruling on appeal). "Simply stated, a party cannot complain of error which that party induced the court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004).

¶ 37      At the November 7, 2017, hearing on the motion to compel, Direct Auto informed the trial court that it was "declining to participate further in the case." Direct Auto informed the court that it refused to answer the complaint and "advised the Court that the Court's free to enter a default judgment against my client and enter the relief requested in the complaint." The trial court then took exactly the action that Direct Auto had requested. Direct Auto cannot be heard now to complain on appeal that the trial court erred by taking the requested

action. Thus, we cannot find that the trial court abused its discretion by entering a default judgment.

¶ 38    If Direct Auto had desired an immediate appeal of the trial court's December 13, 2016, or September 28, 2017, orders compelling discovery, it could have sought a friendly contempt order. *E.g.*, *Doe v. Township High School District 211*, 2015 IL App (1st) 140857, ¶ 67 (" 'it is well settled that the correctness of a discovery order may be tested through contempt proceedings' " (quoting *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001))); Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016) (permitting the appeal of an "order finding a person or entity in contempt of court"). However, Direct Auto chose not to proceed in that manner.

¶ 39    Direct Auto also argues that the trial court erred in entering a default judgment against it because the entry of a default judgment ignored the *res judicata* effect of the judgment in the prior case. Since Direct Auto invited the trial court's entry of a default judgment, we will discuss the *res judicata* issue below in connection with the trial court's denial of Direct Auto's motion to dismiss.

¶ 40                    II. Denying the Motion to Dismiss

¶ 41                    A. For Failure to State a Cause of Action

¶ 42    In addition to appealing the entry of a default judgment, Direct Auto appeals the trial court's September 28, 2017, order denying its motion to dismiss Noel Hernandez's countercomplaint.

¶ 43        While the denial of a motion to dismiss is not ordinarily appealable,[5] we may consider "an order that was a necessary step to the order at issue before us." *People v. Maxey*, 2015 IL App (1st) 140036, ¶ 38; *CitiMortgage, Inc. v. Hoeft*, 2015 IL App (1st) 150459, ¶ 8 (an appeal is deemed to include an interlocutory order "if that order was a step in the procedural progression" leading to the final judgment). In the case at bar, the denial was a necessary step in the procedural progression to the order before us, since without it, Direct Auto would not have sought the entry of a default judgment.

¶ 44        Although Direct Auto filed a combined motion to dismiss in the court below, it argues in its appellate brief that the trial court erred by failing to dismiss Noel Hernandez's countercomplaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)) for failure to state a cause of action.

¶ 45        A motion to dismiss under section 2-615 challenges the legal sufficiency of the complaint by alleging defects apparent on the complaint's face. *Young v. Bryco Arms*, 213 Ill. 2d 433, 440 (2004). The question is whether the allegations in the complaint are sufficient to state a cause of action upon which a court may grant relief. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). To answer this question, a court will consider as true all the well-pleaded facts in the complaint, as well as any reasonable inferences that may be drawn from them. *Young*, 213 Ill. 2d at 441. In addition, a court will construe the allegations in the complaint in the light most favorable to the nonmoving party. *Young*, 213 Ill. 2d at 441.

¶ 46        An appellate court will review *de novo* a trial court's section 2-615 determination. *Young*, 213 Ill. 2d at 440. *De novo* consideration means that we perform the same analysis

---

[5] The denial of a motion to dismiss is "not generally reviewable on appeal as any error in the denial of the motion merges into the final judgment *** and it is from that final judgment that an appeal is taken." *Ovnik v. Podolskey*, 2017 IL App (1st) 162987, ¶ 19.

that a trial judge would perform. *Rico Industries, Inc. v. TLC Group, Inc.*, 2018 IL App (1st) 172279, ¶ 62. In addition, we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Rico Industries*, 2018 IL App (1st) 172279, ¶ 64.

¶ 47    Direct Auto argues that the trial court should have dismissed Noel Hernandez's claim that Direct Auto has an obligation to defend and indemnify the Bahenas because (1) Noel Hernandez has no standing to assert an injury on behalf of the Bahenas and (2) his claim is not ripe for adjudication since the issue of the Bahena's liability to him has not yet been adjudicated and, thus, any opinion by this court would be an advisory one.[6]

¶ 48    "Illinois public policy[7] dictates that insurance is 'not necessarily a private matter between an insurer and its insured,' and as such, an injured party's rights against the liability insurer vests at the moment of the accident giving rise to the underlying claim." *State Farm Fire & Casualty Co. v. Perez*, 387 Ill. App. 3d 549, 552 (2008) (quoting *Skidmore v. Throgmorton*, 323 Ill. App. 3d 417, 422 (2001)); *Reagor v. Travelers Insurance Co.*, 92 Ill. App. 3d 99, 102 (1980) ("liability insurance is no longer considered merely a private matter between an insured and an insurer"). The injured party's vested rights cannot be "defeated by the joint efforts of the insured and the insurer." *State Farm*, 387 Ill. App. 3d at 552;

---

[6] The irony is rich here. Direct Auto has been litigating this suit for years as a plaintiff, seeking a declaratory judgment that it now claims is premature and not ripe. On November 3, 2014, the Bahenas were defaulted for failing to appear and answer. Thus, Direct Auto was seeking a declaratory judgment solely against Noel Hernandez for over two years. In addition, it is attempting to assert the preclusive effect of a prior judgment, which, according to its present argument, was, at least in part, not ripe for adjudication.

[7] "The risk-spreading theories of liability insurance policies mandate that affected members of the public should be afforded the maximum protection possible in accord with fairness to the insurer." *Skidmore*, 323 Ill. App. 3d at 422; *Reagor*, 92 Ill. App. 3d at 102 ("liability insurance abounds with public policy considerations, one of which is that the risk-spreading theories of such policies should operate to afford affected members of the public the maximum protection possible consonant with fairness to the insurer").

*Skidmore*, 323 Ill. App. 3d at 421. "The injured party's relationship with the liability insurer is that of a beneficiary, who becomes a real party in interest in the insurance contract at the time of the occurrence giving rise to his injuries." *State Farm*, 387 Ill. App. 3d at 552; *Skidmore*, 323 Ill. App. 3d at 422 ("The injured party's rights come into existence at the moment of the accident."); *Reagor*, 92 Ill. App. 3d at 103 ("As a beneficiary of a liability insurance policy, an injured person has rights under the policy which vest at the time of the occurrence giving rise to his injuries."). "[E]ven though an injured party is not a party to the insurance contract, he or she will always be allowed to file a declaratory judgment action in order to determine the liable party's coverage pursuant to that insurance contract." *Skidmore*, 323 Ill. App. 3d at 422 (found that an injured passenger was "allowed to directly sue" insurance company to ascertain the coverage of a driver's policy).

¶ 49 "While the policy of the State prohibits direct action by an injured party against an insurer before judgment has been rendered against its insured, such policy is not violated as long as the issue of coverage is effectively severed from any issue of the insured's liability and the assessment of damages." *State Farm*, 387 Ill. App. 3d at 552; *Reagor*, 92 Ill. App. 3d at 103-04. "[T]he rationale underlying this policy," of prohibiting direct actions against an insurer before judgment has been rendered against the insured, "is that disclosure of liability coverage at a trial against an insured for injuries resulting from his negligence" would be "prejudicial." *Reagor*, 92 Ill. App. 3d at 103. "Clearly, this is not the situation here" where the issue of coverage has been effectively divorced from any question of liability. *Reagor*, 92 Ill. App. 3d at 104.

¶ 50 Thus, under long-established Illinois precedent, Noel Hernandez, as an injured party, has standing and his suit is not premature. Further, ripeness is an issue that can be waived.

*Continental Casualty Co. v. Howard Hoffman & Associates*, 2011 IL App (1st) 100957, ¶ 21 (citing *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 253 (2010)). Direct Auto waived the issue of ripeness with respect to the question of coverage, when it filed suit seeking a resolution of the same question.

¶ 51      In addition, "where an insurer brings a declaratory judgment action to determine coverage of a claim made against its insured, the injured person is a necessary party to the suit [citations], and the injured person may appeal from a judgment that there is no coverage." *Reagor*, 92 Ill. App. 3d at 103; see also *State Farm*, 387 Ill. App. 3d at 552 (an injured passenger was "a necessary party" in a declaratory judgment action by an insurance company against its insured driver); *Continental*, 2011 IL App (1st) 100957, ¶ 23 ("despite the fact that no liability has yet been determined with respect to its claim," the injured party was a necessary party to the coverage litigation since it has " 'a substantial right in the insurance policy's viability' " (quoting *Skidmore*, 323 Ill. App. 3d at 421)); *Skidmore*, 323 Ill. App. 3d at 421 ("the injured party is a necessary party to the suit" concerning coverage "because he or she has a substantial right in the insurance policy's viability").

¶ 52      In the case at bar, Direct Auto failed to name Noel Hernandez as a necessary party to the prior suit, and now is attempting to use its own failure to foreclose that party's rights to appeal that determination. To allow that would be a miscarriage of justice. "The injured person *must be given* the opportunity to litigate the question of coverage under the liability insurance policy *before his interest *** may be terminated*." (Emphases added.) *Reagor*, 92 Ill. App. 3d at 103 (this court found that an injured party could bring a declaratory judgment action against an insurer to determine coverage for any damages that may be awarded).

¶ 53                                B. *Res Judicata*

¶ 54          Although Direct Auto does not raise[8] the *res judicata* issue in the section of its appellate brief concerning the denial of its motion to dismiss, we address it here because we already concluded above that the trial court committed no error when it entered a default judgment at Direct Auto's request.

¶ 55          Direct Auto argued in the court below and before this court that Noel Hernandez's countercomplaint is barred by the judgment entered in Direct Auto's prior suit, in which Direct Auto failed to name him as a party. Section 2-619(a)(4) permits an involuntary dismissal on the ground that "the cause of action is barred by a prior judgment." 735 ILCS 5/2-619(a)(4) (West 2016).

¶ 56          A motion to dismiss pursuant to section 2-619 admits the legal sufficiency of the claim but asserts defects, defenses or another affirmative matter, appearing on the face of the complaint or established by external submissions, that defeats the claim or operates to avoid its legal effect. *Daniels v. Union Pacific R.R. Co.*, 388 Ill. App. 3d 850, 855 (2009); *Zahl v. Krupa*, 365 Ill. App. 3d 653, 657-58 (2006). " 'Such a motion admits the legal sufficiency of the plaintiff's complaint but interposes some affirmative matter that prevents the lawsuit from going forward.' " *Daniels*, 388 Ill. App. 3d at 855 (quoting *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174 (2002)). "In a section 2-619 motion to dismiss, the [movant] bears the burden of proving the affirmative defense." *Daniels*, 388 Ill. App. 3d at 855 (citing *Luise, Inc. v. Village of Skokie*, 335 Ill. App. 3d 672, 685 (2002)). Thus, the burden is on Direct Auto to prove its claim of *res judicata*.

---

[8] "[F]orfeiture is a limitation on the parties and not the court." *Oshana v. FCL Builders, Inc.*, 2013 IL App (1st) 120851, ¶ 18; *Skidmore*, 322 Ill. App. 3d at 420 ("the doctrine of waiver serves as a warning to the parties rather than a limitation on the appellate court's jurisdiction").

¶ 57        Generally, section 2-619 motions present a question of law, which we review *de novo. DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006); *Schacht v. Lome*, 2016 IL App (1st) 141931, ¶ 33. *De novo* consideration means that we perform the same analysis that a trial court would perform. *Schacht*, 2016 IL App (1st) 141931, ¶ 33.

¶ 58        The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction acts as an absolute bar to a subsequent action between the same parties or their privies involving the same claim, demand, or cause of action. *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 9. The bar extends not only to all matters that were actually decided but also to those matters that could have been decided in the prior action. *Wilson*, 2012 IL 112898, ¶ 9; *Cload v. West*, 328 Ill. App. 3d 946, 950 (2002) ("*Res judicata* bars not only those issues that were actually litigated \*\*\*; it bars those that could have been raised as well."). Three requirements must be met for *res judicata* to apply: (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of the cause of action, and (3) an identity of parties or their privies. *Wilson*, 2012 IL 112898, ¶ 9. "The party invoking the defense of *res judicata* bears the burden of demonstrating it applies." *Oshana*, 2013 IL App (1st) 120851, ¶ 15; *Cload*, 328 Ill. App. 3d at 950.

¶ 59        Where "the same set of facts was necessary to maintain and prove both cases, the causes of action were identical for purposes of *res judicata*." *Wilson*, 2012 IL 112898, ¶ 12. "The principle that *res judicata* prohibits a party from later seeking relief on the basis of issues that might have been raised in the prior action also prevents a litigant from splitting a single cause of action into more than one proceeding." *Wilson*, 2012 IL 112898, ¶ 9. Thus, where a plaintiff could have litigated its claims in the first action, "the claims were barred by *res judicata*." *Wilson*, 2012 IL 112898, ¶ 9.

¶ 60    In the case at bar, Direct Auto had to prove the same set of facts in both cases; thus, from the perspective of Direct Auto as plaintiff, its burden of proof concerning coverage was identical. However, it chose to split its cause of action into two proceedings when it chose not to add Noel Hernandez as a party, even though it was aware of his claims and lawsuit for five months before the first proceeding ended. Where Direct Auto could have litigated this claim in the first action but chose not to, its present claim against Noel Hernandez is barred by the principles underlying *res judicata*.

¶ 61    The purpose of *res judicata* is to insure that litigation has an end, to prevent claim-splitting, and to protect the public from the cost of multiple litigations. *Wilson*, 2012 IL 112898, ¶¶ 12-13. To allow Direct Auto to use *res judicata* as a sword in this case would make the doctrine meaningless.

¶ 62    In addition, Direct Auto cannot prove privity, the third requirement of *res judicata*.[9] " 'A nonparty may be bound pursuant to privity if his interests are so closely aligned to those of a party that the party is the "virtual representative" of the nonparty.' " *Oshana*, 2013 IL App (1st) 120851, ¶ 23 (quoting *City of Chicago v. St. John's United Church of Christ*, 404 Ill. App. 3d 505, 513 (2010), quoting *City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n*, 362 Ill. App. 3d 556, 563 (2005)). "Privity generally exists when parties adequately represent the same legal interest." *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 559 (2009); *Oshana*, 2013 IL App (1st) 120851, ¶ 23.

---

[9] "A prior judgment may have preclusive effects on a subsequent action under either the doctrine of *res judicata* or the doctrine of collateral estoppel." *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 558 (2009). Direct Auto does not argue collateral estoppel. However, "regardless of which of the two doctrines applies, *** privity is the same under either doctrine." *State Farm Fire*, 394 Ill. App. 3d at 559.

¶ 63    There is no one prevailing definition of 'privity' that Illinois courts apply in all cases. *Oshana*, 2013 IL App (1st) 120851, ¶ 23. Instead, Illinois courts have generally applied the Restatement (Second) of Judgments (Restatement) to determine privity. *Oshana*, 2013 IL App (1st) 120851, ¶ 28; *State Farm Fire*, 394 Ill. App. 3d at 559. "The Restatement (Second) of Judgments explains that ' "privity" refers to a cluster of relationships, [citation], under which the preclusive effects of a judgment extend beyond a party to the original action and apply to persons having specified relationships to that party.' " *State Farm Fire*, 394 Ill. App. 3d at 559 (quoting Restatement (Second) of Judgments, Introduction at 1 (1982)); *Oshana*, 2013 IL App (1st) 120851, ¶ 28. The Restatement sets forth three categories of relationship on which Illinois courts have relied. *Oshana*, 2013 IL App (1st) 120851, ¶ 28; *State Farm Fire*, 394 Ill. App. 3d at 559.

¶ 64    Section 75 of the Restatement sets forth three categories of relationships that may establish privity: (1) relationships that are "explicitly representative," such as a trustee, executor or the class representative of a class designated by a court; (2) "substantive legal relationships," in which one of the parties to the relationship is "treated as having the capacity to bind the other to a judgment," such as parties who are vicariously liable for one another (*e.g.* corporations and their officers); and (3) "successors in interest to property." Restatement (Second) of Judgments § 75, cmt. a, at 210 (1982); see also Restatement (Second) of Judgments §§ 41-43, 45-61 (1982); *Oshana*, 2013 IL App (1st) 120851, ¶ 28; *State Farm Fire*, 394 Ill. App. 3d at 559-60.

¶ 65    Direct Auto has not argued that one of these categories specifically applies, in part because Direct Auto has not identified specifically who Noel Hernandez was in privity with. The record before us does not disclose whether all of the parties named as defendants in the

first case were served or whether they opposed Direct Auto's motion in the first case. Before the trial court in our case, Direct Auto claimed that its summary judgment in the first case was opposed by Erica Bahena and " 'one of the other claimants.' " See *supra* ¶ 16. As for Erica Bahena, Direct Auto observed that the Bahenas were being defended by Direct Auto's retained counsel in the underlying tort actions against the injured passengers. As a result, the Bahenas and the injured passengers do not share the same legal interest. See also *State Farm*, 387 Ill. App. 3d at 552 (a default judgment in favor of the insurance company and against its insured driver "could not be imputed" to the injured passenger because the "vested rights" of the passenger "may not be defeated" by the "behavior" of the insured in litigation); *cf. Skidmore*, 323 Ill. App. 3d at 420 ("an insurer and its insured cannot agree to policy interpretations with the intent to keep an injured party from recovering"). In addition, Erica Bahena had filed for bankruptcy, and at least one of the Bahenas had moved to withdraw from the first case, all prior to the trial court's grant of summary judgment in that action. Thus, the defendants who were seeking to withdraw or who were in bankruptcy certainly did not have the same legal interest as a party like Noel Hernandez who was still actively seeking relief for his alleged injuries under the policy.

¶ 66 As for the other unnamed claimant, it could have been any of the other named defendants in the prior action and, therefore, not necessarily one of the other injured passengers. The defendants in the prior action were: Sana Kishta, as next friend of Ahmed Kishta, the deceased driver of the vehicle in which Noel Hernandez was a passenger; Ariel Hernandez, another passenger in the vehicle driven by Kishta; and Enterprise Rent A Car (Enterprise), the owner of the vehicle driven by Kishta. Enterprise likely had its own separate insurance to cover any potential liability from an accident, and the driver likely had such

insurance as well. As a result, their interest in pursuing additional indemnification from Direct Auto may not have been the same as Noel Hernandez's interest in indemnification. As for Ariel Hernandez, there is no indication on the record before us what—if any—injuries she had. Thus, Direct Auto has failed in its burden to show that Noel Hernandez was in privity with the parties in the prior action who allegedly defended against Direct Auto's summary judgment motion.

¶ 67        Further, we do not know what the prior court held. All we have in the record before us is a short, one-paragraph handwritten order granting summary judgment that does not provide the basis or reasons for its finding. No transcript or bystander's report was provided in the appellate record. The order states only that, with respect to these defendants, Direct Auto has no obligation to defend or indemnify. However, the order does not state what Direct Auto argues on this appeal—namely, that the policy was void *ab initio* because the policyholder failed to name all the members of her household over the age of 15, even though she specifically listed the driver involved in this particular accident. Direct Auto seeks to give preclusive effect to an order where its preclusive effect is unclear. Since Direct Auto had the burden of proof with respect to its *res judicata* claim, we cannot find that it carried its burden.

¶ 68        In sum, Direct Auto failed to name Noel Hernandez as a defendant in a prior action and now seeks to benefit from that failure by binding him to an order in an action to which he was not a party, and when he sought information to challenge that order as it applied to him, Direct Auto defaulted rather than provide the information.

¶ 69        Direct Auto knew Noel Hernandez was a necessary party but it chose not to amend its complaint to add him in order to avoid delay in the first action, because that action was

"nearing" resolution. As a result, there has been nothing but delay ever since—five years of it and counting.

¶ 70    There are two different doctrines that must be interpreted to work together: necessary party and *res judicata*. It cannot be the case that one violates the necessary party doctrine, by knowingly and deliberately failing to add a necessary party, and then turns around and uses *res judicata* as a sword against the very party that it failed to add. In addition, Direct Auto has failed in its burden to show that the requirements of *res judicata*, such as privity, are satisfied.

¶ 71                                CONCLUSION

¶ 72    For the foregoing reasons, we affirm the trial court's order.

¶ 73    Affirmed.